**Phillip Carroll MOWDY and Johnna Faye Mowdy, Plaintiffs-Appellees,**

v.

**Talmage KELLY, Road Superintendent of Wayne County, Defendant and Wayne County, Tennessee, A Governmental Entity, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section at Nashville.

Dec. 30, 1983.

Application for Permission to Appeal Denied by Supreme Court March 19, 1984.

**490**

Patricia Bryant McGuire, Freemon & McGuire, Lawrenceburg, for plaintiffs-appellees.

Charles Jeffrey Barnett, Waynesboro, for defendant-appellant.

## OPINION

LEWIS, Judge.

Plaintiffs sued defendant Talmage Kelly (Kelly), Road Superintendent of Wayne County, Tennessee, and defendant-appellant Wayne County, Tennessee, under the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-101 et seq., and alleged they were injured and their automobile damaged as a result of the negligence of the defendants. Subsequent to a bench trial, the Trial Judge dismissed the complaint against Kelly and entered judgment for plaintiffs and against defendant-appellant Wayne County.

1. *Removal of immunity for injury from unsafe streets and highways—Notice required.*
   —(a) Immunity from suit of a governmental

The legislature, by enacting the Tennessee Governmental Tort Liability Act, removed immunity from the governmental entities enumerated in the act and, with certain exceptions, made them liable for their negligence. T.C.A. § 29-20-203 removes governmental immunity for injury from unsafe streets and highways and T.C.A. § 29-20-204 removes immunity for injury from dangerous structures. Wayne County, a governmental entity, is within the purview of the Act and, if found to be guilty of negligence, would be liable to plaintiffs.

This case arose when plaintiff Phillip Mowdy was operating, and his wife, plaintiff Johnna Mowdy, was a passenger in, their 1977 Mustang automobile. Plaintiffs started across a wooden bridge in Wayne County when a part of the bridge collapsed under the weight of plaintiffs' Mustang, allowing the right rear wheel of the Mustang to fall through the bridge. Plaintiffs alleged in their complaint that "the bridge was in a defective, unsafe and/or dangerous condition...."; that defendants "had actual and/or constructive notice of the defective condition of the bridge since the bridge was in such an aged, defective, unsafe and/or dangerous condition that it collapsed under the weight of one single automobile." They further alleged that "[d]efendant, Talmage Kelly, in his duties as Road Superintendent of Wayne County, Tennessee, had the duty to maintain and supervise the road system ...; and he breached his duty when he allowed said bridge to be traveled while in such a defective, unsafe and/or dangerous condition."

The Trial Judge found that at the time the accident occurred the bridge "was in a defective, unsafe and dangerous condition; ... that the Defendants had adequate time and opportunity to discern the dangerous conditions; that the Defendants had constructive notice of the dangerous condition; [and] that this cause of action is sustainable under Tennessee Code Annotated, Section 29-20-203." [1] The Trial Judge specif-

entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned

ically found that T.C.A. § 29–20–204 [2] and T.C.A. § 29–20–205 were not applicable. The Trial Judge dismissed the suit against Kelly after finding that plaintiffs' cause of action was "not based *per se* upon any alleged negligent act of an employee within the scope of his employment."

We review this case *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the finding of the trial court, unless a preponderance of the evidence is otherwise. Tenn.R. App.P. 13(d). When the evidence preponderates against the finding of the trial court, it is the duty of this Court to enter a decree as the law and evidence warrant. *Tipton v. Smith,* 593 S.W.2d 298, 301 (Tenn.App.1980). The record supports the Trial Judge's finding that at the time of the accident the bridge "was in a defective, unsafe and dangerous condition." It is unnecessary under the facts of this case for this Court to decide whether the Trial Court erred in finding that T.C.A. § 29–20–204 was inapplicable.

█ We do hold that the Trial Judge erred in his finding that T.C.A. § 29–20–205 was not applicable. Plaintiffs alleged in their complaint that it was the duty of Talmage Kelly, the Wayne County Road Superintendent, to maintain and supervise the road system and that he breached his duty when he allowed the bridge to be traveled in a defective, unsafe or dangerous condition. The evidence supports this allegation.

No statute has been cited, nor has our research disclosed one, that imposes upon a county the duty to inspect its roads and bridges and we are unaware of any common law duty imposed upon a county to inspect its roads and bridges. The only evidence in this record concerning a duty to "inspect, maintain, and protect the road system in Wayne County" was given by Kelly on cross-examination. "Q. I asked—if it was your understanding that the law gave you the duty to inspect, maintain, and protect the road system in Wayne County, Tennessee? A. Right, I'm responsible for the roads and bridges."

We, likewise, have been unable to find a statute which imposes a duty upon the Wayne County Road Superintendent to inspect. It may be that the duty to inspect is pursuant to a private act or even a resolution of the Wayne County Commission. In any event for the purpose of this opinion, we assume that a duty is imposed upon Kelly "to inspect ... the road system in Wayne County."

While governmental immunity may be an anachronism, it is a long recognized common law concept. The Tennessee Supreme Court has said it is for the Tennessee General Assembly and not the courts of this State to make changes in that concept. The General Assembly has responded with the passage of Chapter 345, Public Acts of 1973 (T.C.A. § 29–20–101 *et seq.*). Chapter 345 is in derogation of the common law and must be strictly construed.

T.C.A. § 29–20–205 provides in pertinent part:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:

(4) Arises out of a failure to make an inspection, or by reason of making an

and controlled by such governmental entity. The terms "street" and "highway" shall include traffic control devices thereon.

(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29–20–302.

2. *Removal of immunity for injury from dangerous structures—Exception—Notice required.* —(a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29–20–302.

inadequate or negligent inspection of any property.

T.C.A. § 29–20–102(2) defines an employee to "mean and include any official whether elected or appointed, officer, employee or servant, or any member of any board, agency, or commission (whether compensated or not), or any officer, employee or servant thereof, of a governmental entity, including the sheriff and his employees." ·

■ Immunity is not removed when the proximate cause of the injury is the employee's failure to inspect "any property." T.C.A. § 29–20–205(4) is implicit and makes no exceptions for roads, bridges, or other property covered under T.C.A. § 29–20–203 or § 29–20–204.

Kelly, an employee of Wayne County, had a duty to inspect, according to his testimony, the bridges of Wayne County. If he had performed that duty, the defective bridge would have been discovered. The "negligent act or omission" proximately causing plaintiffs' injuries was Kelly's failure to perform his duty.

Plaintiffs' reliance on *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971), is misplaced. In *Sanford*, plaintiff's home was located at a lower elevation than the defendant University of Utah's land. Sometime prior to 1963, the University contracted with independent contractors to construct an engineering building and parking lot. During the construction, the natural drainage was changed. In June, 1963, plaintiff's home was flooded for which she received compensation. To allay her concern about future flooding, the president of the University wrote her regarding steps which had been taken to see that the flooding would not happen again. In 1967, plaintiff's home was again flooded. Plaintiff brought suit under Utah's Governmental Tort Immunity Act, which is similar to the Tennessee Governmental Tort Liability Act. The trial court found that the University had actual notice at least two years before plaintiff's home was flooded in 1967 "that a dangerous condition existed by reason of a public improvement; that

President Fletcher's letter was evidence of such notice of the condition." *Id.* at 289, 488 P.2d at 743. On Appeal, the University urged that "[T.C.A. § 29–20–205][3] of the Act modifies [T.C.A. § 29–20–203 and 29–20–204] and that under the Act a governmental entity is not liable for a defective or dangerous condition causing injury, unless the condition was caused by a negligent act or omission of an employee committed within the scope of his employment" and that since the "defective condition was not caused by any person under the supervision and control of the University," the University is not liable. *Id.* at 288, 488 P.2d at 742.

The Court, answering this contention, stated:

> Since the waiver of immunity in § [29–20–203 and 29–20–204] encompasses a much broader field of tort liability than merely negligent conduct of employees within the scope of their employment, the legislature could not have intended that [§ 29–20–205] including its exceptions should modify [§ 29–20–203 and 29–20–204] even though it be conceded that the negligent conduct of an employee might be involved in an action for injuries caused by the creation or maintenance of a dangerous or defective condition.

*Id.* at 292, 488 P.2d at 745. We agree that it is not necessary for an employee of a governmental entity to be guilty of a negligent act before liability attaches under either T.C.A. § 29–20–203 or T.C.A. § 29–20–204. Under T.C.A. § 29–20–203, if injury is caused by a "defective, unsafe or dangerous condition of any street, alley, sidewalk, or highway owned and controlled by" the governmental entity and the governmental entity has the requisite "constructive and/or actual notice," then the governmental entity would be liable. Likewise, under T.C.A. § 29–20–204, if "injury is caused by the dangerous or defective condition" of a structure covered under that section, and the governmental entity has the requisite "constructive and/or actual notice," then

**3.** Relevant sections of the Tennessee Governmental Tort Liability Act are substituted.

the governmental entity would be liable. It cannot defend on the ground that a third person caused the dangerous or defective condition and that, even though it had notice, it is not liable because one of its employees was not guilty of negligent conduct which created the dangerous or defective condition.

That is not the situation here. Here, a duty to inspect was imposed on the employee and the employee's failure to exercise his duty was the proximate cause of plaintiffs' injuries.

If Wayne County had constructive notice, it "[arose] out of [Kelly's] failure to make an inspection" which was "a negligent act or omission of [Kelly] within the scope of his employment."

Governmental immunity has not been removed under the facts of this case and plaintiffs' suit must be dismissed.

The judgment of the Trial Court is reversed and the case dismissed with costs to plaintiffs and the cause remanded to the Trial Court for the collection of costs and any further necessary proceedings.

TODD, P.J., M.S., concurs.

CANTRELL, J., dissents.

CANTRELL, Judge, dissenting.

I respectfully dissent.

I agree that under § 29–20–205 the county is still immune from suit for the failure of an employee to make an inspection. However, under § 29–20–203 or § 29–20–204 the county may be liable if the county had "constructive and/or actual notice" of the dangerous, unsafe, or defective condition (I assume that under § 29–20–204, a dangerous or defective condition is no longer "latent" if the county has constructive or actual notice of it).

The fact that under § 29–20–205(4) immunity is not removed for the failure to make an inspection does not defeat the removal of immunity under the two preceding sections, nor does it defeat the imposition of constructive notice on the county when, as in this case, the county had the duty to inspect.

T.C.A. § 29–20–203 provides:

(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. The terms "street" and "highway" shall include traffic control devices thereon.

(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29–20–302.

The trial judge found that the bridge was in a defective, unsafe, and dangerous condition at the time of the accident; that the defendants had adequate time and opportunity to discover the dangerous condition; and that the defendants had constructive notice of the dangerous condition. If we sustain those findings, which we must unless the evidence preponderates against them, Rule 13(d) Tennessee Rules of Appellate Procedure, then the plaintiffs have proved a claim that comes under § 29–20–203.

In my opinion the evidence does not preponderate against any of the quoted findings of the trial judge. The only testimony on the subject of the condition of the bridge shows that the bridge was defective. The plaintiff testified that "one of the seals (sic) or beams holding it ... had rotted," and there is no evidence to dispute that testimony. Since wooden beams do not rot overnight, I think the evidence does not preponderate against the trial judge's finding that the county had adequate time and opportunity to discover the dangerous condition.

That presents us squarely with the question of notice, "constructive and/or actual." There is no proof that the defendants had actual notice of the condition of the bridge. So the critical question is whether they had constructive notice. I would hold that they did.

My conclusion that the county had constructive notice of the dangerous condition of the bridge is not based on the fact that the county had a crew in the area shortly before the date of the accident or that the defect was obvious. There is simply not enough proof in the record to show that the county got notice through these channels. Rather my conclusion is based on the fact that the county had a duty to inspect the bridge and is charged with notice of what the inspection would reveal. In Black's Law Dictionary Third Edition at page 1258, the various types of notice are discussed:

Notice is actual or constructive. Actual notice has been defined as notice expressly and actually given, and brought home to the party directly ... The term "actual notice," however, is generally given a wider meaning as embracing two classes, express and implied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to the party because he is shown to be conscious of having the means of knowledge. In this sense actual notice is such notice as is positively proved to have been given to a party directly and personally because the evidence within knowledge was sufficient to put him upon inquiry ... Constructive notice is information or knowledge of a fact imputed by law to a person, (although he may not actually have it,) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it ...

Notice is also further classified as express or implied. Express notice embraces not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated ... Implied notice is one of the varieties of actual notice (not constructive) and is distinguished from "express" actual notice. It is notice inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character as to put him upon inquiry, and which, if the inquiry were followed up with due diligence, would lead him definitely to the knowledge of the main fact ...

"Constructive notice" is a presumption of law, making it impossible for one to deny the matter concerning which notice is given, while "implied notice" is a presumption of fact, relating to what one can learn by reasonable inquiry, and arises from actual notice of circumstances and not from constructive notice ... Or as otherwise defined, implied notice may be said to exist where the fact in question lies open to the knowledge of the party, so that the exercise of reasonable observation and watchfulness would not fail to apprise him of it, although no one has told him of it in so many words ...

The Tennessee cases, sometimes confuse constructive notice with implied notice. However, in *Levins v. W.O. Peeples Grocery Company*, 38 S.W. 733 (Tenn.Chan. App.1896), the court said:

While it is true that whatever puts a party on inquiry amounts to notice, provided knowledge of the relevant facts would be obtained by the exercise of ordinary diligence ... nevertheless the party will not be charged with constructive notice unless the circumstances are such that the court can say that it was his duty to acquire the knowledge in question, and that his failure to acquire it was the result of culpable negligence.

In 58 Am.Jur.2d *Notice* § 6, constructive notice is defined as:

Constructive notice is the law's substitute for actual notice, intended to protect innocent persons who are about to engage in lawful transactions. It is a legal inference from established facts and, like other legal presumptions, does not admit of dispute. It is in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted. Constructive notice has sometimes been

defined by statute as notice imputed to a person not having actual notice, and it has been said that an essential part of the presumption is that the person sought to be charged is in fact ignorant of the facts. Constructive notice is a mere fiction, treated as actual notice and knowledge for certain purposes, but is not, in point of literal fact, either notice or knowledge.

The superintendent of the Wayne County Road System testified that it was the duty of his department to inspect the county roads and bridges. Since the county had a duty to inspect the bridge and the opportunity to discover its defective condition, I would hold that the county had constructive notice of any defect which an inspection would reveal. Therefore, the county would be liable under T.C.A. § 29–20–203.

As I see it, this is quite another thing from the liability of the county for the failure of an employee to make an inspection, for which under T.C.A. § 29–20–205(4) the county is still immune. Here we would impose liability not for the failure to make an inspection; instead the liability is for the dangerous condition of the streets and highways, notice of which the law imposes on the county arising from the duty to inspect.

Our act is almost identical to the Utah Governmental Tort Liability Act. In *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971), the Utah Court interpreted their act in a case where the defendants insisted that the retention of immunity for an action based on the failure of an employee to inspect modified the previous two sections and retained immunity if any of the acts complained of involved an inspection. The Utah Court resolved that question adversely to the government. I think that is the correct decision and would so hold in the present case.

For these reasons I would affirm the award of judgment by the trial court.

Therefore, I respectfully dissent.