811 F.2d 607
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Shelby Jean POARCH, Plaintiff-Appellee,
v.
CITY OF GATLINBURG, Defendant-Appellant.
 No. 85-6080.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1986.
 
 Before WELLFORD, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This action was brought by the plaintiff-appellee, Shelby Jean Poarch, a North Carolina resident, against defendant-appellant, the City of Gatlinburg, a municipal corporation existing under the laws of the State of Tennessee. The district court held that it had diversity jurisdiction to hear this cause.[1]
 
 
 2
 The appellee alleged that she had fallen on a public sidewalk and that the appellant was liable in damages to her. This action was heard before Judge James H. Jarvis without a jury, although plaintiff requested a jury trial.[2] After trial the court awarded damages to the appellee in the amount of $18,500. Appellant appeals, preserving the jurisdictional objection and asserting governmental immunity under the circumstances.
 
 I.
 
 3
 Appellee stated that she was walking on the sidewalk in the City of Gatlinburg, Tennessee and "had gone just a short while when I fell on a piece of brick sticking up between the--two flats of concrete." On cross-examination, she testified that she could see the sidewalk as she walked along and that nothing obstructed her view of the sidewalk, but she did not see where the brick was raised on the sidewalk. She was talking with a friend as she walked along the sidewalk and she caught the toe of her shoe on a brick in the sidewalk causing her to fall, resulting in the damages claimed.
 
 
 4
 Poarch testified that she missed six weeks of work as a result of her injuries, including fractures at the elbow joints. At the time of the accident she was earning $249.04 per week. The parties stipulated that the appellee's medical bills total $644.00. The appellee testified on direct examination that she had changed jobs following her fall and later took a new job that appellant City claims was an improvement from the standpoint of earnings.
 
 
 5
 Jack Arthur, Gatlinburg City Manager at the time of this accident and later City Engineer, testified that the sidewalks and streets were inspected in October or November 1983, some six or seven months before the accident, and that inspection did not show any problems with the sidewalk at the location of appellee's fall. He further stated that he had no actual notice of any problem in the area where the accident occurred and that he had no indication of calls in his office about the walkway in that area. His testimony also established that the separation between the bricks was approximately three-quarters of an inch to one inch in height at the place where Poarch experienced her fall.
 
 
 6
 The City Superintendent of Public Works, Kyle Cole, testified that his department was responsible for sidewalk care and road repair. He could recall no notice of the problem or claimed defect where the appellee fell. The City had done repair work, however, some seventy-five to eighty feet away from the area at issue some seven years prior to this incident, but Cole maintained no knowledge existed of the specific defect claimed by Poarch.
 
 
 7
 The district court held Gatlinburg liable on the following pertinent findings and rationale:
 
 
 8
 The remaining question, then, is whether the defendant City had constructive notice of the defect. The court finds that the sidewalk at the place where plaintiff tripped and fell was unreasonably dangerous to pedestrian traffic. The sidewalk runs along side the main street of Gatlinburg, Tennessee, which is lined with shops, motels and restaurants, and is heavily traveled by shoppers and tourists.... The defect in question is not readily discernable to casual observation unless one looks closely and is close upon the defect. The sidewalk is constructed in part of concrete slabs and brick laid in sand. The defect in question was caused by settling of the brick portion of the sidewalk immediately adjacent to a concrete section. The concrete portion replaced a portion of the brick walkway and was constructed a few years before this accident.... This condition existed along the edge of concrete slab for a distance of approximately 10 feet. The plaintiff did not notice this condition and, as she reached the first elevated brick, her toe hit the one-inch raised face of the first brick causing her to fall violently forward resulting in serious, painful injuries.... The City's manager, Mr. Arthur, is a civil engineer and he readily recognized that the condition was caused by faulty construction. He admitted that he knew that it was likely that a condition such as that which existed here might be created by modifying the brick sidewalk.... The City's maintenance superintendent was aware for many years of problems with the instability of the brick walkway as he had noticed that certain of the bricks had settled in other areas nearby, causing conditions unfavorable for pedestrian traffic. The City had conducted a survey of sidewalk conditions in October and November of 1983 before the accident of May, 1984. The City was in the process of repairing its sidewalks when this accident occurred, and it acknowledged that it had a duty to keep said sidewalks in a reasonably safe condition. The survey failed to reveal the defect in question; however, the court cannot conclude that this defect did or did not exist at the time of the survey absent additional proof on the subject.
 
 
 9
 ... In order for the City to have had constructive notice there must be some proof that the condition had been in existence for a sufficient length of time for the city to have, in the exercise of reasonable care, known of its existence and either guarded the public from its danger or repaired it. If there was proof that it had existed for some time, then the court could find constructive notice. If it had been proven that the city swept or cleaned its sidewalks on a regular basis, the court might find actual or constructive notice. However, there is no proof of any constructive notice of this particular defect.
 
 
 10
 ... The court believes that the proof does support the conclusion that the city knew, or in the exercise of reasonable care should have known, that the brick sidewalk presented a real and existent potential danger in that this type of defect could occur at any time due to settling. It had therefore actual or at the very least constructive notice that what did occur would probably occur unless something was done to prevent it. Mr. Arthur admitted he recognized that a potential danger existed at the point of the defect. The City's superintendent of maintenance knew that the brick sidewalk could become unstable in places as much as two to three years prior to this occurrence. By the very nature of this particular defect, it is reasonable to infer from the proof that it did not occur overnight, but was something that developed due to a natural settling process.
 
 
 11
 (some emphasis added.)
 
 II.
 
 12
 The City principally argues that it is immune from suit through operation of the following statute:
 
 
 13
 Removal of immunity for injury from unsafe streets and highways--Notice required.--(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. The terms "street" and "highway" shall include traffic control devices thereon.
 
 
 14
 (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by Sec. 29-20-302.
 
 
 15
 T.C.A. 29-20-203 (Supp.1985). The City asserts that it has immunity because appellee did not prove the City had actual or constructive notice as required by subsection (b). It argues further that the district court's finding that "there is no proof of any constructive notice of this particular defect," renders its later "inference" of "actual or at the very least constructive notice" improper and contrary to the statute. The court based its inference on the foreseeability of the danger occurring, since Gatlinburg conceded that it knew "a potential danger existed at the point of defect." The City appears to argue that the statutory requirement of "proof" of actual or constructive notice precludes as a matter of law the court's use of such an inference to establish notice. In Ramsey v. Gatlinburg, No. 105, slip op. (Tenn.Ct.App. Feb. 12, 1986), the Tennessee court reversed the trial court's finding of constructive notice of a smooth depression of 8 X 1 1/2 inches in the pavement of a parking lot. Reviewing the evidence de novo, the court relied on the absence of evidence establishing the duration of the depression. It specifically noted, however, that "the nature of the defect has some bearing on whether the city would be on constructive notice." Slip op. at 4. In the present case, the district court focused on the nature of the defect to infer constructive notice: that there was a tendency of the brick sidewalk to settle and create hazardous irregularities.
 
 
 16
 We agree with the City that the district court's seemingly inconsistent findings require clarification. The court found specifically that "there is no proof of any constructive notice of this particular defect." Later, the court goes on to hold, nevertheless, that the City had constructive notice apparently because it knew problems could potentially arise from the settling of the sidewalk. The court refers to the City's knowledge of potential problems in the sidewalk seventy-five feet away from the defect at issue that gave rise to the "foreseeability" of "potential danger[s]." Id. p. 5. The district court's holding may well imply that the City was put on constructive notice because of its failure to inspect this area of the sidewalk for possible defects or settling of a brick portion of it.
 
 
 17
 Mowdy v. Kelly, 667 S.W.2d 489 (Tenn.App.1983), is persuasive authority for rejecting the rationale that failure to inspect the particular area is a basis for imposing municipal liability.[3] In Mowdy the court determined that a failure of the city to inspect could not give rise to the city's constructive notice of defects under 29-20-203(b). The court in Mowdy reasoned that the specific exception to removal of immunity for failure to inspect in 29-20-205(4)[4] prevents the failure to inspect to function as constructive notice in 29-20-203(b).
 
 
 18
 We are unclear as to the basis of the district judge's holding. He makes no reference to Ramsey or to Mowdy in the course of his opinion, although he does make reference to T.C.A. Sec. 29-20-205(4). We are likewise uncertain whether he construed the allegation of negligent "maintenance" of the sidewalk to exclude or include a failure to inspect in order to determine whether maintenance and/or repair was needed.
 
 
 19
 Accordingly, we REMAND this case to the district court for further specific findings and conclusions in response to the concerns herein expressed.
 
 
 
 [1]
 We assume without deciding that the district court had jurisdiction. The issue whether a state can condition its removal of sovereign immunity by requiring a party to bring suit only in state court is an issue this court will hear en banc. See Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities, No. 85-3471 (Sept. 3, 1986). We need not decide the issue here because the effect of our holding today on the district court's judgment is the same regardless of how the court resolves the jurisdictional issue
 
 
 [2]
 See T.C.A. 29-20-307 (Supp.1986) (plaintiff not entitled to jury trial under Governmental Tort Liability Act)
 
 
 [3]
 Plaintiff argues that Mowdy is inapplicable because plaintiff did not base her complaint on a failure to inspect. The complaint in fact does allege the city had "negligently constructed and/or maintained" the sidewalk. More importantly, however, we have found, as discussed above, that the district court's reasoning implies it based its holding of constructive notice on a failure to inspect, or making an inadequate inspection
 
 
 [4]
 29-20-205. Removal of immunity for injury caused by negligent act or omission of employees--Exceptions.--Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
 ....
 (4) Arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property.