852 F.2d 1288
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Shelby Jean POARCH, Plaintiff-Appellee,
v.
CITY OF GATLINBURG, Defendant-Appellant.
 No. 87-5134.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a personal injury action brought in federal court by a North Carolina woman, plaintiff Shelby Poarch, who sued the City of Gatlinburg, Tennessee, after she tripped and fell on one of the city's sidewalks. The case was tried to the court, which entered judgment for the plaintiff in the amount of $18,500. The city appealed, and we remanded the case for clarification of certain of the court's findings. See Poarch v. City of Gatlinburg, No. 85-6080 (6th Cir.1985) (unpublished per curiam).
 
 
 2
 On remand, the district court found that although the city had no actual or constructive knowledge of the particular defect that caused the accident, the city did have knowledge that the sidewalk was designed and constructed in such a way as to cause uneven settling. The case is again before us on appeal.
 
 
 3
 The city argues that it is immune from suit as a matter of law under Tenn. Code Ann. Secs. 29-20-203 and 205; that under Tenn. Code Ann. Sec. 29-20-305 the city is not subject to suit in federal court; that there was no negligence on the city's part; and that the amount of the damage award was excessive. We conclude that the Tennessee statute removing the immunity of governmental entities from suit did not waive the city's immunity from suit under the operative facts as found by the district court. Accordingly, we shall reverse the court's judgment.
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 Jack Arthur, who was city manager of Gatlinburg at the time of the accident and who later became city engineer, testified that the sidewalk where the injury occurred is located along a state right-of-way that is maintained by the city. Arthur stated that the streets and sidewalks were inspected about six or seven months before the accident, and that this inspection did not reveal any problems with the sidewalk at the location where plaintiff subsequently fell. He also testified that he had no actual notice of any problem in this area, and that he was not aware of any calls to his office concerning this part of the walkway. He estimated that the separation between the bricks at the location of plaintiff's fall was between three quarters of an inch to one inch in height.
 
 
 7
 Kyle Cole, the city superintendant of public works, testified that his department was responsible for sidewalk care and repair. He was unable to recall any prior notice of a problem or defect at the particular part of the sidewalk where plaintiff fell. About seven years before the accident, however, the city had repaired the sidewalk about seventy-five to eight feet from the site of plaintiff's injury.
 
 
 8
 The district court found initially that the sidewalk was constructed with concrete slabs and bricks laid in sand. The defect in question was caused by settling of the brick portion of the sidewalk immediately adjacent to a concrete slab with which a part of the brick walkway had been replaced a few years before the accident. There was a one inch discrepancy between the two surfaces; the discrepancy extended for about 10 feet along the edge of the concrete slab. The defect was not readily discernible on casual observation, and, in fact, the plaintiff had not noticed it as she walked along the sidewalk before her fall. The court concluded that this section of the sidewalk, which runs along the main street of the city, was unreasonably dangerous to pedestrian traffic.
 
 
 9
 The court further found that the city manager, who is a civil engineer, "readily recognized that the condition was caused by faulty construction ... [and that such a condition] might be created by modifying the brick sidewalk.... The City's maintenance superintendent was aware for many years of problems with the instability of the brick walkway as he had noticed that certain of the bricks had settled in other areas nearby, causing conditions unfavorable for pedestrian traffic." The court also found that the city had conducted a survey of sidewalk conditions in October and November of 1983 and was in the process of repairing its sidewalks when the accident occurred.
 
 
 10
 In the clarifying order it issued on remand, the district court maintained that its decision to hold the city liable had been based on a finding of actual notice of a dangerous condition which the city had an immediate duty to rectify by repair or renovation. "The sidewalk itself was defective, unsafe and dangerous for pedestrian traffic, and the city had known this for a long time." The court found that although the city did not have actual or constructive notice of the particular defect causing the plaintiff's fall, it had actual notice that the design and construction would cause uneven settling from which a dangerous condition would result.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 The city argues that it is immune from suit in this case because under Tenn.Code Ann. Sec. 29-20-201, which abrogates sovereign immunity generally, the abrogation is conditioned upon the plaintiff's action being brought in a state circuit court under Tenn.Code Ann. Sec. 29-20-305. Section 201 provides that
 
 
 14
 (a) Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of said governmental entities wherein said governmental entities are engaged in the exercise and discharge or any of their functions, governmental or proprietary.
 
 
 15
 (b) When immunity is removed by this chapter any claim for damages must be brought in strict compliance with the terms of this chapter.
 
 
 16
 Section 305(a) of the same chapter provides that "a claimant may institute an action in the circuit court against the governmental entity in those circumstances where immunity from suit has been removed as provided for in this chapter." Section 307 provides that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury."
 
 
 17
 We agree with the district court that a state statute cannot deprive a federal court of diversity jurisdiction by providing that a claim actionable under state law may be prosecuted only in a state court. See Markham v. City of Newport News, 292 F.2d 711 (4th Cir.1961); C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 4211 (1988).
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 This does not end our inquiry, however, because Tenn.Code Ann. Sec. 29-20-203 provides as follows:
 
 
 21
 Removal of immunity for injury from unsafe streets and highways--Notice required.--(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity.
 
 
 22
 (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by Sec. 29-20-302.
 
 
 23
 The question this section requires us to address is whether the plaintiff proved that the city had constructive and/or actual notice "of such [defective, unsafe, or dangerous] condition."
 
 
 24
 In Ramsey v. City of Gatlinburg, Sevier Law # 105 (Tenn.App.1986), the Tennessee Court of Appeals considered a situation similar to the one at bar. The plaintiff in Ramsey tripped and fell on a path running through a parking lot leased by the City of Gatlinburg. The path had a depression about eight inches across and one and one-half inches deep; it was on this depression that the plaintiff tripped. Applying Sec. 203, the court found that the plaintiff had not been able to establish how long the defect had been present and had not shown that the city had either actual or constructive knowledge of its existence. The court also noted specifically that "the nature of the defect has some bearing on whether the city would be on constructive notice." (Slip op. at 4; ten-foot hole is "different entirely from a one and one-half inch depression.")
 
 
 25
 In the case at bar, the district court found that there was no proof of how long the defect had existed except that it was caused by settling. As in Ramsey, the size of the particular defect was not sufficient to place the city on constructive notice of its existence. Plaintiff attempts to distinguish Ramsey on the ground that in the present case the city had actual notice that the design and construction of the sidewalks would create a dangerous situation eventually; absent proof that the city knew the dangerous condition would materialize within some discrete period of time after the installation of the concrete, however, it does not seem to us that the city can be charged with notice that the particular defective condition that caused the plaintiff's accident had come into existence as of the date of the accident. The statute, as we read it, requires notice of an unsafe condition capable of causing injury right now--not notice that such a condition will come into existence at some indeterminate point in the future.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 We are strengthened in our conclusion by the Tennessee courts' construction of Tenn.Code Ann. Sec. 29-20-205. That section, in pertinent part, provides as follows:
 
 
 29
 Removal of immunity for injury caused by negligent act or omission of employees--Exceptions--Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury: ...
 
 
 30
 (4) Arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property.
 
 
 31
 In Mowdy v. Kelly, 667 S.W.2d 489 (Tenn.App.1983), the plaintiffs were injured when a wooden bridge collapsed under the weight of their automobile. Although the record supported a finding that the bridge was in a "defective, unsafe and dangerous condition," the court assumed for purposes of the case that the county road superintendent was under a duty to inspect the bridge. Applying Sec. 205, the court found that immunity was not removed when the proximate cause of the injury was an employee's failure to inspect "any property." The court went on to note that Sec. 205 "makes no exceptions for roads, bridges, or other property covered under T.C.A. Sec. 29-20-203 or 204." Id. at 492.
 
 
 32
 In the case at bar the city had no notice of the present existence of the particular one-inch gap that caused the injury. In light of the construction that the Tennessee Court of Appeals placed on Sec. 205 in Mowdy, we do not believe that the Tennessee courts would construe Sec. 203 as abrogating governmental immunity on the strength of notice that a section of sidewalk on which it was safe to walk when the sidewalk was repaired would become unsafe at some future time, the actual arrival of that time not having been known to the city until after the plaintiff's accident. We believe that the statute requires actual or constructive notice of the particular condition causing injury.
 
 
 33
 The judgment of the district court is REVERSED.