# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 10, 2001 Session

## KANTA KEITH, ET AL. v. GENE ERVIN HOWERTON, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-685-98  Dale C. Workman, Judge**

### FILED AUGUST 28, 2001

### No. E2000-02703-COA-R3-CV

---

In this appeal from a judgment of the Knox County Circuit Court the Plaintiffs/Appellants, Kanta Keith, Darlene Keith and Walter Jackson, contest the Trial Court's ruling that the Defendants/Appellees, Gene Ervin Howerton and Easy Money, Inc., did not violate the Tennessee Consumer Protection Act of 1977 with respect to pawn transactions entered into with the Plaintiffs. The Plaintiffs also contest the amount of damages awarded by the Trial Court for property belonging to them which was stolen while in possession of the Defendants. We affirm in part as modified, reverse in part, and remand for proceedings not inconsistent with this opinion. We adjudge costs of the appeal against the Defendants, Gene Ervin Howerton and Easy Money, Inc.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part as Modified; Reversed in Part and Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Donald Kelly Vowell, Knoxville, Tennessee, for the Appellants, Kanta Keith, Darlene Keith and Walter Jackson.

Craig Lawrence Garrett, Maryville, Tennessee, for the Appellees, Gene Ervin Howerton and Easy Money, Inc.

### OPINION

This is an appeal from a judgment of the Knox County Circuit Court. The Plaintiffs/Appellants, Kanta Keith, Darlene Keith and Walter Jackson contest the Trial Court's ruling that the actions of the Defendants/Appellees, Gene Ervin Howerton and Easy Money, Inc., did not constitute violation of the Tennessee Consumer Protection Act of 1977. The Plaintiffs also contest the amount of damages awarded to them by the Trial Court in consequence of the theft of their property while in possession of the Defendants.

The Defendant Gene Ervin Howerton is owner of the Defendant Easy Money, Inc., a corporation which, at the time of this lawsuit, did business as Big Easy Auto Pawn at three locations in Knox County and at one location in Morristown.

On November 3, 1997, the Plaintiff Walter Jackson went to a Big Easy Auto Pawn shop located on Asheville Highway in Knox County and entered into a pawn/loan transaction pursuant to which he pawned a mens gold ring with chip diamonds. The pawn contract signed by Mr. Jackson shows a loan amount of $50.00, a pawn shop charge of $11.00 and specifies that the "actual cash value of merchandise pawned" is also $50.00. The contract is dated November 3,1997, and bears a due date of December 3,1997.

On December 1, 1997, Mr. Jackson returned to the Defendants' Asheville Highway location and paid the $61.00 required under the agreement for redemption of his ring. Mr. Jackson testified that after accepting payment the Defendants' employee advised him that the shop had been burglarized[1] and that his ring had been among the items stolen. The Defendants' employee then offered Mr. Jackson the option of choosing substitute merchandise of similar value, whereupon Mr. Jackson proceeded to the Defendants' shop on Clinton Highway in an endeavor to find a replacement item. Mr Jackson avers that when he was unable to find a satisfactory replacement item at the Clinton Highway shop the Defendants' employee at that location advised him that he could go to the Defendants' Morristown shop and look there for replacement merchandise. Mr. Jackson attests that at this point he informed the employee that "I didn't want anything in their store, that I wanted my ring or my money back." There is no evidence in the record that Mr. Jackson was offered a monetary reimbursement at that time and he advised the Defendants' employee that he intended to retain legal counsel and "take it up from there".

The Plaintiffs, Kanta Keith and Darlene Keith, entered into six pawn/loan contracts with the Defendants during October and November of 1997 which set forth, *inter alia,* the information itemized below:

| Customer | Item Pawned | Loan Amount | Pawn Charge | Date of Agreement | Due Date |
| --- | --- | --- | --- | --- | --- |
| Kanta Keith | mens diamond ring | $200.00 | $44.00 | 10/17/97 | 11/01/97 |
| Darlene Keith | ladies diamond ring | $200.00 | $44.00 | 10/17/97 | 11/16/97 |
| Darlene Keith | ladies gold coin ring | $50.00 | $11.00 | 11/04/97 | 12/04/97 |

---

[1]The record shows that the Defendants' shop was burglarized on November 10, 1997.

| | | | | | |
|---|---|---|---|---|---|
| Darlene Keith | ladies cluster necklace | $60.00 | $13.20 | 10/31/97 | 11/30/97 |
| Darlene Keith | ladies opal ring | $50.00 | $11.00 | 11/04/97 | 12/04/97 |
| Darlene Keith | guitar and case | $50.00 | $11.00 | 11/04/97 | 12/04/97 |

The contract regarding the mens diamond ring was signed by Mr. Keith and the remaining contracts were signed by Ms. Keith. The same figure is shown for "Amount of Loan" as for "Actual Cash Value of Merchandise Pawned" in each of the contracts.

On November 28, 1997, Ms. Keith went to the Big Easy Auto Pawn shop on Asheville Highway to redeem the ladies gold coin ring pawned on November 4, 1997. After accepting Ms. Keith's payment of the $50.00 loan amount plus the pawn charge of $11.00, the Defendants' employee advised her that the items of property pawned by the Keiths had been stolen in the burglary of the shop.

The record reflects that there is a dispute between the Keiths and the Defendants as to what happened after Ms. Keith was advised of the theft. The Defendants contend that their employee gave Ms. Keith a receipt for the gold coin ring and that she took the receipt to another of the Defendants' shops where she received replacement merchandise of her choice. Ms. Keith denies that she received replacement merchandise and asserts that she rejected the offer of replacement merchandise. Ms. Keith further asserts that she was not offered the option of monetary reimbursement for the stolen property.

On November 5, 1998, the Keiths and Mr. Jackson filed their complaint against the Defendants in the Circuit Court for Knox County. The complaint asserts that, by failing and refusing to pay the value of the pawned items, by failing to offer any recourse other than replacement merchandise and by accepting finance charges on the pawned property knowing that it was stolen, the Defendants are guilty of fraud, breach of contract, outrageous conduct and unfair or deceptive practices. The complaint further asserts that the Defendants' actions constitute violations of both the Truth in Lending Act and the Tennessee Consumer Protection Act and, in consequence, request is made for compensatory and punitive damages as well as treble damages, attorney fees and costs.

The case came on for non-jury trial on July 10, 2000, after which the Trial Court rendered its memorandum opinion. The Court found that the Plaintiffs had failed to support a cause of action with respect to fraud, violation of the Federal Truth in Lending Act[2] or violation of the Tennessee Consumer Protection Act. The Court, however, did find that the Plaintiffs should receive the fair

---

[2] In this appeal the Plaintiffs do not contest the Court's ruling with respect to their causes of action for fraud or for violation of the Federal Truth in Lending Act.

market value of their stolen property and, therefore, granted Mr. Jackson and the Keiths damage awards in the respective amounts of $1,100.00 and $2,250.00. Separate judgments in those amounts were entered on August 11, 2000. On September 7, 2000, the Plaintiffs filed their notice of appeal.

The following issues, which we restate, are presented for our review:

1. Whether the Plaintiffs suffered an ascertainable loss which would entitle them to a cause of action under the Tennessee Consumer Protection Act.

2. Whether the Defendants' failure to offer the Plaintiffs monetary reimbursement for their stolen property constitutes a violation of the Tennessee Pawnbrokers Act of 1988 and, therefore, a violation of the Tennessee Consumer Protection Act.

3. Whether the Keiths should be denied recovery for any pawned property with respect to which they had not made requisite redemption payments under the pawn contracts.

4. Whether the Trial Court erred in its determination of the amount of damages to which the Plaintiffs are entitled.

Other issues raised in this appeal are pretermitted by our conclusions stated hereinafter.

In a non-jury case such as this one our standard of review is *de novo* upon the record with a presumption that the findings of the Trial Court are correct absent a preponderance of the evidence to the contrary. See Tenn.R.App.P. 13(d). No such presumption exists as to the Trial Court's conclusions of law. See *Hawk v. City of Westmoreland*, 960 S.W.2d 10 (Tenn. 1997).

The first issue we examine in this case questions whether the Plaintiffs suffered an ascertainable loss necessary to sustain a cause of action under the Tennessee Consumer Protection Act. The relevant portion of that Act is set forth at T.C.A. 47-18-109(a)(1) as follows:

> (a)(1) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

At the close of the argument in this case the Trial Court concluded that the Plaintiffs should receive the full fair market value of their stolen property. The Court then reasoned that, because it was awarding them the full fair market value of their property, the Plaintiffs had not ultimately suffered an ascertainable loss necessary to sustain a cause of action under the Consumer Protection Act. We respectfully disagree.

It is our finding that the Plaintiffs suffered an ascertainable loss at the moment that the Defendants refused to offer them monetary reimbursement for their stolen property and that the Plaintiffs continued to suffer that loss at the time they filed their complaint on November 5, 1998. We believe the reasoning of the Trial Court is self contradictory in that it acknowledges an ascertainable loss as the *basis* for its award of compensation and then denies that loss as a *result* of its award of compensation. It appears to us that a determination of ascertainable loss only after judgment has been rendered, rather than at the time of the asserted statutory violation, would effectively preclude a plaintiff from ever raising a cause of action under the Act. We do not believe that our Legislature intended such an interpretation of T.C.A. 47-18-109 and we do not find that the Plaintiffs in this case failed to show ascertainable loss as required by the statute.

The next issue before us questions whether the Defendants' failure to offer the Plaintiffs any recourse other than replacement merchandise constituted a violation of the Consumer Protection Act.

We agree with the finding of the Trial Court that whether there has been a violation of the Consumer Protection Act in this case hinges upon the interpretation given to the Tennessee Pawnbrokers Act of 1988 which is set forth at T.C.A. 45-6-201 *et seq.* T.C.A. 45-6-212 prohibits the pawnbroker from engaging in certain designated actions and, at subsection 5, specifies that a pawnbroker shall not:

> (5) Fail to return pledged goods to a pledgor upon payment of the full amount due the pawnbroker on the pawn transaction. In the event such pledged goods are lost or damaged while in the possession of the pawnbroker, it shall be the responsibility of the pawnbroker to replace the lost or damaged goods with like kind or kinds of merchandise. In the event the pledgor and pawnbroker cannot agree as to replacement with like kind or kinds, the pawnbroker shall reimburse the pledgor for the agreed upon value of the article as recited under section 45-6-209(b)(4);

T.C.A. 45-6-209(b)(4) states as follows:

> (b) The pawnbroker shall, at the time of making the pawn transaction and/or buy-sell transaction, enter upon the pawnshop copy of the records as well as on the pawn ticket, and/or buy-sell ticket, the following information, which shall be typed or written in ink and in the English language:
> ...
> (4) The exact value of property as stated by pledgor who pledges same.

The Plaintiffs assert that the Defendants violated T.C.A. 45-6-212(5) by failing to offer them monetary reimbursement when the Plaintiffs refused to accept the offered remedy of replacement merchandise. Both Mr. Jackson and Ms. Keith testified at trial regarding the Defendants' failure in this regard.

Mr. Jackson's testimony was as follows:

A    Okay. I went to the store on Clinton Highway and they didn't have anything in there that -- with value of the cost of my ring, what my ring was worth. They tried to send me to a -- they had a store in Morristown, I think she said. It was a lady I talked to. And, I told them, no, I didn't want nothing else in replace of my ring. I wanted my money.

Q    Then, what happened, anything else? Did you talk to them any further?

A    No, I told them I was going to get me a lawyer and to take it up from there.

Ms. Keith's testimony reflects a similar experience:

Q    The options, number one, was to go somewhere else and pick out something that you --

A    Of equal value.

Q    Was there another option?

A    No.

Q    What did you tell them you wanted?

A    My jewelry.

Q    And your jewelry wasn't there. So, did your have some further discussion with them?

A    Other than the fact that I'd see you in court. My stuff was gone. What could I do?

Q    Did they at any time, offer to pay you money?

A    No.

    ....

Q     Now, in your discussion with them, did they let you know that this option of picking out something of equal value was your only option with regard to everything that had been stolen?

A     That was the only option they gave me.

The Defendants observe that T.C.A. 45-6-212(5) requires a reimbursement of "agreed upon value," but contend that the "agreed upon value" of the Plaintiffs' property has always been a matter of dispute in that the Plaintiffs deny that the value set forth in the pawn contracts as the actual cash value of their property is an accurate statement of the true value of their property. The Defendants argue that since the Plaintiffs would not accept those values set forth in the pawn contracts and the Defendants do not accept the values placed upon the property by the Plaintiffs in their complaint and in their testimony at trial, there *is* no "agreed upon value." The Defendants argue that, because there was never an "agreed upon value," they could not have reimbursed the "agreed upon value" as required by the statute and that they should not be found guilty of a consumer protection violation on the grounds that they did not pay the Plaintiffs "some" money.

Our review of the record reveals that the Defendants have submitted no evidence that they gave the Plaintiffs the option of reimbursement when the Plaintiffs rejected their offer of replacement merchandise. Since the Defendants did not present the option of any reimbursement, the question of amount of reimbursement was not yet an issue between the parties. The Defendants violation of T.C.A. 45-6-212(5) does not lie in the fact that they failed to offer the Plaintiffs a certain amount of reimbursement but in the fact that they failed to offer the Plaintiffs *any* reimbursement.

The Defendants further argue that Ms. Keith did, in fact, accept their offer of replacement merchandise and, therefore, the statutory obligation of reimbursement never arose with respect to the Keiths. In support of this argument the Defendants presented three documents at trial which they allege were found stapled together in the Defendants' business records. The Defendants assert that the first of these, identified as Exhibit 10 at trial, is a receipt which was given to Ms. Keith on November 28, 1997, when she redeemed the ladies gold coin ring. The document appears to be a copy of the pawn contract entered into between the parties with respect to that ring. The hand written notation "STOLEN 11/10/97" followed by the initials "REK" appear on the face of the document in red ink. The Defendants assert that the initials are those of a former employee who worked at the Defendants' shop at the time, and Ms. Keith confirmed that this notation was written on the document when she redeemed the described ring. The document also contains the notation "Replaced w/ Item #97-2531 ½ carrot Dia marq." handwritten in black ink . Although this notation is not signed or initialed, Charles Hodge, who was the store manager of the Big Easy Auto Pawn location on Chapman Highway in November of 1997, testified at trial that he made the latter notation after Ms. Keith accepted a one-half carat marquise diamond to replace her stolen coin ring. Ms. Keith denies that she accepted replacement merchandise and attested that she does not know how the latter notation came to be on the document. The document is neither signed nor initialed by Ms. Keith.

The other two documents presented by the Defendants in support of their argument that Ms. Keith accepted replacement merchandise were introduced at trial as Exhibits 13 and 14. Each of these two documents is designated on its face "SALES RECEIPT" and is dated "11-28-97."

Exhibit 13 lists four video cassettes[3] and a ring which is described in the document as "LDS RNG ½ CAR. MARQ. STONE." The document also shows an amount billed and paid for the four movies, although there is no amount shown as billed or paid with respect to the ring. The amount due for all the items listed is shown as zero. The document is neither signed nor initialed by Ms. Keith nor does her name appear anywhere on the document.

Exhibit 14 lists three rings and a bracelet which are designated as "10 KYG WILLIAMS RING"; "14 KYG WILLIAMS RING"; "10 KYG ROPE BRACELET"; and "LDS RNG PK ICE." Beneath this list the document states, "THESE ITEMS REPLACED FAR [sic] STOLEN MERCHANDISE FOR ASHEVILLE HWY." The Defendants submitted testimony from Mr. Hodge that all of these items were given to Ms. Keith to replace her property that was lost in the burglary. As with Exhibit 13, Exhibit 14 is neither signed nor initialed by Ms. Keith nor does her name appear anywhere on the document.

The Trial Court concluded that none of the three documents submitted by the Defendants was competent to prove that Ms. Keith had received replacement items for her stolen property because none was signed by her. We agree with and affirm the Trial Court's ruling in this regard.

It is our finding that the Defendants did violate T.C.A. 45-6-212 by failing to offer the Plaintiffs monetary reimbursement for those items of their property which were stolen while in the possession of the Defendants. We further find that the Defendants' violation of T.C.A. 45-6-212 also constitutes a violation of the Tennessee Consumer Protection Act, T.C.A. 47-18-101, *et seq.* One of the stated purposes of the Consumer Protection Act is set forth at T.C.A. 47-18-102(2):

> (2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state.

It is our determination that one of the manifest purposes of T.C.A. 45-6-212 is to insure that a pledgor is allowed the option of reimbursement under circumstances such as those present in the case *sub judice*. The Defendants' failure to provide the option of reimbursement was a denial of the Plaintiffs' right under the statute and was, therefore, clearly unfair. Furthermore, the Defendants' failure in this regard was also deceptive in that it would have necessarily led the Plaintiffs to the erroneous conclusion that their only recourse under the circumstances was to accept substitute merchandise for their stolen property.

---

[3]Although Exhibit 13 describes these items as movies, we assume that they are video cassettes.

The next issue we address is whether the Keiths are precluded from recovering damages as to any items of their pawned property by reason of the fact that they had not made all requisite redemption payments due on those items under the pawn contracts.

The Defendants do not dispute that Mr. Jackson made all payments due for the redemption of his ring or that Ms. Keith made the payments necessary to redeem her gold coin ring. However, the Defendants deny that the Keiths ever made any payment on the remaining five pawn contracts. The Defendants argue that, since T.C.A. 45-6-212(5) conditions the responsibility for replacement or reimbursement upon "payment in the full amount due the pawnbroker on the pawn transaction," they are not liable to the Keiths on the five unpaid contracts.

The Trial Court made no specific findings as to whether the Keiths were entitled to recovery with respect to all six of the pawn contracts listed in their complaint. However, we are compelled to conclude that, given the amount of damages awarded the Keiths and the fact that the Trial Court did not indicate that damages would not lie for any of the items pawned by the Keiths, the Trial Court did not find that the Keiths should be disallowed an award of damages for property pawned under any of the six contracts by reason of non-payment.

The record shows that, as of November 28, 1997, the only item pawned by the Keiths with respect to which full redemption payments were made was the gold coin ring. The record also shows, however, that at that time, redemption payments were not yet due under the three pawn contracts covering the ladies cluster necklace, ladies opal ring and the guitar and case. And, although the pawn contracts show that redemption payments on the ladies diamond ring and the mens diamond ring were past due after November 16,1997, those two items were also still subject to redemption under T.C.A. 45-6-211(a) which states:

> (a) In every pawn transaction made under a loan of money pawn transaction as defined in this part, the pawnbroker shall retain in the pawnbroker's possession the pledged goods for thirty (30) days after the maturity date of the pawn transaction. Pledged goods not redeemed by the pledgor on or before the maturity date of the pawn transaction set out in the pawn ticket issued in connection with any pawn transaction may be redeemed by the pledgor within such period of thirty (30) days after the maturity date of the pawn transaction by the payment of the originally agreed redemption price (interest, fee and loan amount), and the payment of the additional interest and fee for the period following the original maturity date due on the pawn transaction.

The Keiths contend that once they learned that their property had been stolen and that, upon payment of the amount necessary for redemption of the ladies gold coin ring, their only recourse was to be replacement merchandise, it would have been unavailing for them to pay the amounts due under the remaining five contracts. The Keiths argue that their cause of action should not be

precluded because of their refusal to engage in what would obviously have been an exercise in futility. We agree.

It seems evident to us that even had the Keiths made the redemption payments required under the remaining five contracts the Defendants would still have only offered them the option of replacement merchandise for their stolen property. Under these circumstances the Defendants were not obligated to pay the amounts outstanding under the remaining contracts as a pre-condition to their cause of action under T.C.A. 45-6-212. As stated by the Supreme Court of this State in *Richardson v. Tennessee Board of Dentistry*, 913 S.W.2d 446 (Tenn.1995), "The law should not require one to perform useless and futile acts."

Although the Keiths were not required to pay the amounts due under the remaining contracts in order to maintain their lawsuit, the Defendants nevertheless remain entitled to payment of these outstanding amounts and, as provided hereafter in this opinion, we find that any damages awarded to the Keiths should be offset by payments due under the unredeemed contracts.

The final issue before us questions whether the Trial Court erred in its award of damages to the Plaintiffs.

As previously stated, on August 11, 2000, the Trial Court entered final judgments on behalf of Mr. Jackson and the Keiths in the respective amounts of $1,100.00 and $2,250.00. Our review of the Trial Court's memorandum opinion reveals that these amounts represent the Trial Court's determination of the fair market value of the Plaintiffs' stolen property.

Ms Keith testified at trial that the total value of the stolen property belonging to her and her husband was between $5,825.00 and $6,025.00. Mr. Jackson testified that the value of his stolen ring was $1,700.00. The Defendants did not offer evidence of value at trial and maintain that they were unable to do so because the property was unavailable for valuation, the employee who made the pawn contracts with the Plaintiffs was not available to testify and there was no information available as to the cut, clarity, exact size or quality of the items of jewelry stolen.

The Plaintiffs contend that the Trial Court should have accepted the values they attested to because there was no opposing evidence of value presented by the Defendants. The Plaintiffs further contend that the Trial Court offered no reason for its refusal to accept the values placed on the property by the Plaintiffs and that the values assigned by the Court are arbitrary and unsupported. The Defendants argue that the credibility of the Plaintiffs' testimony regarding value was undermined during cross examination and, therefore, the Court was justified in rejecting that testimony. The Defendants also maintain that Ms. Keith was not competent to testify as to the value of the mens diamond ring because it did not belong to her but to her husband. The Defendants argue that the values that the Trial Court should have adopted are the amounts stated on the face of the contracts as the actual cash value of the pawned items.

-10-

We first address the Defendants' assertion that Ms. Keith was not competent to testify as to the value of the mens diamond ring which belonged to Mr. Keith. Rule 701 of the Tennessee Rules of Evidence specifies that, "A witness may testify to the value of the witness's own property or services." However, Tennessee case law provides that a witness who is married to the owner of the property and who has intimate knowledge of such property is qualified to give a lay opinion as to the value of the property. See *State v. Mills,* an unpublished opinion of the Court of Criminal Appeals filed in Nashville on September 15, 2000. It is undisputed that Ms. Keith is married to the owner of the property in question. Also, she has intimate knowledge of the property having personally purchased it as a gift for Mr. Keith. We, therefore find that Ms. Keith is competent to testify as to her opinion of the value of her husband's diamond ring.

We next address the Plaintiffs' argument that the Trial Court was bound to accept those values attested to by the Plaintiffs at trial because the Defendants did not present their own contradictory evidence as to value.

The Trial Court made it quite clear in its memorandum opinion that it made its own independent determination of the value of the Plaintiffs' stolen property because it did not believe that the Plaintiffs' testimony in that regard was credible:

> The Court is not satisfied and cannot accept the Plaintiffs' impression as to the value of the property here. The Court just doesn't -- can't accept that that is accurate. I know I had a chance to look at them, listen to them, and watch them, and I've got to deal with credibility here. Observing them and listening to them in a couple of things they did, I just can't believe they've given me an accurate appraisal of fair market value of this property.

The law is well established that this Court does not pass on the credibility of witnesses. A trial court, having seen and heard the witnesses testify, is in the best position to determine the witnesses' credibility. See *Bowman v. Bowman*, 836 S.W.2d 563 (Tenn. Ct. App. 1991). We also note that, with respect to expert testimony, this Court has held that such testimony, even if uncontradicted, is purely advisory and the trier of fact may draw upon its common knowledge and arrive at a different conclusion. See *England v. Burns Stone Co., Inc.,* 874 S.W.2d 32 (Tenn. Ct. App. 1993). If a trial court is not bound by the uncontradicted testimony of an expert, it stands to reason that it should not be bound by the uncontradicted opinion testimony of lay witnesses such as the Plaintiffs in the matter *sub judice*.

Although the Trial Court does not set forth its specific reasons for refusing to accept the Plaintiffs' testimony as to value, we find that the Trial Court's decision is sufficiently supported by the record. For instance, Mr. Jackson testified that the fair market value of his ring was $1,700.00 which was the price of the ring when it was purchased and he allowed for no diminishment of value in consequence of the fact that the ring was used. Similarly, Ms. Keith testified that the guitar was purchased used for $150.00 and the Guitar case was purchased new for $80.00 for a total purchase price of $230.00; however, she testified that the current fair market value of these items at the time

-11-

of trial was $225.00, allowing a diminishment in value from the purchase price of only $5.00. The assuredness of Ms. Keith's opinion as to value is also called into question by the conflict between the values presented by her trial testimony and the values stated in her complaint. In her complaint Ms. Keith valued the guitar and case at $150.00 while she testified at trial that the value of the guitar and case was $225.00. And, although in her complaint she valued the ladies cluster necklace at $1,800.00, at trial she valued that item at between $400.00 and $500.00.

In view of the foregoing and the record as a whole it is our conclusion that the Trial Court did not err by failing to accept the values attested to by the Plaintiffs and the Plaintiffs' argument that the Trial Court was bound to accept those values is without merit.

We next address the Defendants' contention that the Plaintiffs should be bound by the value set forth as "Actual Cash Value of Merchandise Pawned" in each of the pawn contracts.

The Defendants contend that by enacting T.C.A. 45-6-212(5) to require that the pawnbroker reimburse the pledgor for the agreed upon value of lost merchandise, the Legislature contemplated that the parties would be free to contract up front as to agreed upon value. The Defendants assert that the actual cash value of each item of property is clearly and plainly stated as such on the face of the contract, that the Plaintiffs freely signed the contracts and that the Plaintiffs should, therefore, be bound by the contractual amounts.

Although T.C.A. 45-6-212(5) requires that the pawnbroker reimburse the "agreed upon value" of the pledgor's lost property, it is specifically the "agreed upon value" as recited at T.C.A. 45-6-209(b)(4). The latter section mandates that the value to be listed in the pawn contract shall be "the exact value of property as stated by pledgor who pledges same." Evidence presented at trial in this case clearly establishes that the amount set forth as "Actual Cash Value of Merchandise Pawned" was not the value stated by the Plaintiffs because the Plaintiffs were never consulted as to the value of their property. Instead, as stipulated at trial, the Defendants' practice in this case, and as a general matter, was to merely re-list the amount of the loan as the "Actual Cash Value of Merchandise Pawned."

We conclude that the Legislature's intent in enacting T.C.A. 45-6-209(b)(4) was to insure that the pledgor would receive the full value of his or her pawned property should it be lost while in the pawnbroker's care. Statutes are a manifestation of the public policy of this State. See *Cary v. Cary*, 937 S.W.2d 777 (Tenn. 1996). It would be against the public policy reflected in T.C.A. 45-6-209(b)(4) to limit the Plaintiffs' damage award to the amounts set forth in the contracts as the actual cash value of their property when those amounts are nothing more than a restatement of the loan amounts. Accordingly, it is our finding that the Plaintiffs' damage award should not be limited to the amounts shown as the actual value of their property in the contracts.

The Trial Court does not specifically state what factors it considered in reaching its decision as to the value of the Plaintiffs' property. Ms. Keith testified that the total value of her and her

husband's property was between $5,825.00 and $6,025.00, while Mr. Jackson testified that the value of his ring was $1,700.00. The Defendants did not submit proof of value other than the pawn contracts which showed a total value of $610.00 for the Keiths' property and a value of $50.00 for Mr. Jackson's ring. The Trial Court assigned a total value of $2,250.00 to the Keiths' property and a value of $1,100.00 to Mr. Jackson's property. The values set by the Trial Court are within the range of values presented by the parties and we do not find that the evidence preponderates to the contrary.

Next, the Defendants assert that they are entitled to a setoff for the loan payments and fees which remain due under the five unredeemed pawn contracts between themselves and the Keiths. We agree. The Keiths will receive a windfall if they are allowed to recover the fair market value of their property and are at the same time absolved of their obligations to repay the money loaned and the pawn charges due under the contracts. Although the Keiths contend that the Trial Court may have already allowed the Defendants a setoff in its award of damages, we find no evidence in the record which compels us to agree with that contention. Adding the outstanding loan amounts and pawn charges due under the unredeemed contracts as set forth earlier in this opinion, we find that there is a remaining balance due the Defendants under those contracts in the sum of $683.20. Accordingly, we find that the Defendants should be allowed a setoff in the amount of $683.20, thereby reducing the award of damages to the Keiths from $2,250.00 to $1,566.80.

As a final matter relative to the issue of damages we address the Plaintiffs' assertion that they should receive treble damages and attorney fees pursuant to T.C.A. 47-18-109(a)(3) and (4) which state as follows:

> (3) If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper.
> (4) In determining whether treble damages should be awarded, the trial court may consider, among other things:
>> (A) The competence of the consumer or other person;
>> (B) The nature of the deception or coercion practiced upon the consumer or other person;
>> (C) The damage to the consumer or other person; and
>> (D) The good faith of the person found to have violated the provisions of this part.

We agree with the Plaintiffs' assertion that the Defendants' failure to offer reimbursement was knowing and willful; however, because the Trial Court did not find the Defendants' actions to be a violation of T.C.A. 47-18-109, the Court did not address the question of whether the Plaintiffs are entitled to treble damages and attorney fees under that statute. Accordingly, we remand the case to the Trial Court so that it may determine whether the Plaintiffs should receive treble damages and attorney fees.

For the foregoing reasons the judgment of the Trial Court is affirmed in part as modified, reversed in part and remanded for further proceedings not inconsistent with this opinion. Costs of appeal are adjudged against the Defendants, Gene Ervin Howerton and Easy Money, Inc.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE