# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### (HEARD AT COLUMBIA)


TRACY HAWKS and DALE HAWKS,   )

       )

    Plaintiffs-Appellees,    )

       )

v.         )

       )

CITY OF WESTMORELAND,     )

       )

    Defendant-Appellant.    )

       )

**FOR PUBLICATION**
**Filed: December 31, 1997**

SUMNER CIRCUIT

Hon. Thomas Goodall,
Judge

Appeal No.
01S01-9704-CV-00083

**FILED**

**December 31, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

For Plaintiffs-Appellees:
Bruce N. Oldham
Oldham & Dunning, LLC
Gallatin, Tennessee

For Defendant-Appellant:
J. Russell Farrar
Deborah R. Sowell
Farrar & Bates
Nashville, Tennessee

# O P I N I O N


COURT OF APPEALS AFFIRMED.            DROWOTA, J.

The primary issue in this appeal is whether the City of Westmoreland had "constructive notice" of the dangerous and defective condition of the fire hydrants which resulted in the total fire loss of the home of the plaintiffs, Tracey and Dale Hawks. Finding that the inoperable fire hydrants would have been discovered had the City performed an adequate inspection, the lower courts charged the City with constructive notice of the dangerous and defective condition and held it liable to the plaintiffs for the damages that could have been avoided had the fire hydrants been operable. After carefully considering the record, as well as the briefs and argument of counsel, we agree that the City should be charged with constructive notice and, therefore, affirm the judgment of the Court of Appeals upholding the trial court's judgment in favor of the plaintiffs.[1]

## BACKGROUND

On October 23, 1993, at approximately 3:45 a.m., the Westmoreland Volunteer Fire Department was dispatched to extinguish a fire of unknown origin at the home of the plaintiffs, Tracey and Dale Hawks, located at 1135 Rainbow Circle in the City of Westmoreland. The plaintiffs were out of town when the fire occurred.

Though a portion of the roof was ablaze when the firefighters arrived, the fire primarily was confined to the middle of the house. Utilizing the water from the tanks on the fire trucks, the fire was brought under control within fifteen to thirty minutes of the firefighters' arrival. When the water supply in the tanks was exhausted, the firefighters attempted to obtain water from the two fire hydrants nearest the burning

---

[1]Oral arguments were heard in this case on October 8, 1997 in Columbia, Maury County,Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

home. However, the hydrants yielded no water because an underground valve in the feeder pipe for each was closed. Although the firefighters had with them tools to open the valve in the hydrants, they did not have with them the six foot wrench which was required to open the underground valves. When it was not being used by maintenance employees of the City water system, that tool was kept at the public works building.

When the firefighters realized that the hydrants were inoperable, they sent tankers to the civil defense building to obtain more water, called a neighboring fire department for backup assistance, and dispatched a city employee to retrieve the special wrench to open the underground valves. While the firefighters waited for additional water, the fire gained momentum. The home was almost totally destroyed by fire before either additional water or the special wrench to open the valves arrived at the scene.

Thereafter, the plaintiffs brought this lawsuit against the City of Westmoreland pursuant to the Tennessee Governmental Tort Liability Act, specifically Tenn. Code Ann. § 29-20-204 (1980 Repl.), which provides as follows:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.
>
> (b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302.

The plaintiffs sought damages from the City for the total fire loss of their home which they alleged resulted from the dangerous or defective condition of the fire hydrants. While the parties agreed that the City had no actual knowledge that the fire hydrants were inoperable, the plaintiffs alleged that the City was not immune from suit because it had constructive notice of the dangerous or defective condition. The City denied that it had constructive notice and also claimed that the closed valves and inoperative hydrants were latent defective conditions for which it retained immunity from suit under the statute.

The proof at trial established that the valves which were closed are located in an underground chamber approximately twelve to eighteen inches from the fire hydrants, between the main waterline and the hydrants. The chamber is covered by a small cap about the size of a coffee can. To close the valve, it is necessary to pry off the cap, insert the special wrench, and turn the valve clockwise. The valves can not be closed by natural causes, and the special wrench, which is not an item widely available to the public, must be used to effect the closure. The underground valves are only closed by City employees if the adjacent hydrants are leaking and in need of repair. Otherwise, the underground valves should be open. It was undisputed that the valves should have been open on October 23, 1993, when the plaintiffs' home was completely destroyed by fire.

The parties stipulated that the hydrants and water line at issue in this appeal were installed as part of a water system improvement project which was completed in May of 1991 and which was constructed, pursuant to a contract, for the City by Eatherly Construction Company. John Coleman Hayes, P.C., ("Hayes") was

-4-

employed as the inspector for the improvement project, and Danny Hawker, an employee of Hayes, performed the inspection. Although Hawker testified by deposition that all the valves near the hydrants were in the open position when he completed the inspection of the project, he admitted that he did not test each individual hydrant. In addition, Hawker's log book reflected that a leak was detected at Rainbow Circle on February 29, 1991. On March 1, the log book reflected that three leaks had been found at that location. Additionally, the log book reflected that only one of the leaks had been repaired. Hawker testified that the other two leaks were eventually repaired even though the log book contained no notation. Hawker admitted, however, that if the fire hydrants themselves were leaking, he would have closed the underground valves to conduct the inspection and test of the system.

The plaintiffs also presented proof to show that the City of Westmoreland was required by State law[2] to establish and maintain an adequate flushing program. The purpose of the flushing program is to insure that the chlorine level in the water supply system is sufficient to kill bacteria and provide fresh water. The flushing program is not designed or intended to test and insure that fire hydrants are functioning properly. Under the state law, each municipality has the discretion of choosing the method and frequency of flushing. The method and frequency used for flushing the water system in Westmoreland varied.

The plaintiffs offered testimony to indicate that the flushing program utilized by the City was inadequate because the chlorine level in the water was not tested at

---

[2]See,Chapter 1200-5-1, Regulations for Public Water Systems and Drinking Water Quality, Division of Water Supply, Tennessee Department of Environment and Conservation.

each individual hydrant on a regular basis. Other testimony indicated that because the hydrants were on an open line, measuring the chlorine residual levels at the end of the line was sufficient. However, two city employees testified that, had the flushing program been conducted correctly, the City would have discovered the closed underground valves and the inoperable hydrants.

In addition, Larry Akins, who is state certified in water distribution and who currently maintains the flushing program for the City of Westmoreland testified that he measures the chlorine residual level at each of the sixty fire hydrants in the City once every three months. In response to questions from the trial court, Akins opined that the chlorine residual level in the water should be measured at each individual fire hydrant at least once per year. Akins stated that under no circumstances would he forego testing the chlorine level at each hydrant for two years. In light of the fact that the two hydrants at issue in this case had been in existence for approximately two and one-half years when this fire occurred, Akins testified that the City should have known that the underground valves next to the hydrants were closed.

Based upon the proof summarized above, the trial court found that the two fire hydrants nearest the plaintiffs home were in a dangerous and defective condition at the time of the fire on October 23, 1993, and, as a result, the plaintiffs had sustained additional damage to their home which otherwise could have been avoided. The trial court concluded that the City had constructive notice of the condition of the fire hydrants, and found the other defenses raised by the City inapplicable. As a result, the trial court found the City liable and awarded a judgment to the plaintiffs in the

amount of $50,000.[3] The Court of Appeals affirmed the trial court's judgment. Thereafter, we granted the City permission to appeal and, for the reasons that follow, now affirm.

## GOVERNMENTAL TORT LIABILITY ACT

The doctrine of sovereign immunity derives from "feudal notions of the divine right of kings. In feudal England the King was at the very pinnacle of the power structure and was answerable to no court since 'the King can do no wrong.'" Cooper v. Rutherford County, 531 S.W.2d 783, 786 (Tenn. 1975) (Henry, J., dissenting). The doctrine has been a part of the common law of Tennessee for more than a century[4] and provides that suit may not be brought against a governmental entity unless that governmental entity has consented to be sued. Lucius v. City of Memphis, 925 S.W.2d 522, 525 (Tenn. 1996). Indeed, this longstanding rule of sovereign immunity is recognized by the Tennessee Constitution which provides, "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Art. I, § 17, Tenn. Const.

In 1973, the General Assembly enacted the Tennessee Governmental Tort Liability Act ("the GTLA"), which governs claims against counties, municipalities, and other local governmental agencies, but does not apply to state government. Lucius,

---

[3]The trial court found the plaintiffs had sustained real and personal property damage in the amount of $58,500 but awarded a judgment for $50,000, the statutory maximum. Tenn. Code Ann. § 29-20-403 (1997 Supp.).

[4]See Cruse v. City of Columbia, 922 S.W.2d 492, 495 (Tenn. 1996) (citing cases).

925 S.W.2d at 525. The Act initially reaffirms the general common law rule of governmental immunity, stating, in pertinent part, as follows:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a) (1980 Repl. & Supp. 1997). The Act then removes governmental immunity in limited and enumerated instances for certain injuries. Ezell v. Cockrell, 902 S.W.2d 394, 399 (Tenn. 1995); See e.g. Tenn. Code Ann. § 29-20-202(a) (1980 Repl. & Supp. 1997) through Tenn. Code Ann. § 29-20-205 (1980 & Supp. 1997); see also Lucius, 925 S.W.2d at 525. The GTLA, therefore, is a comprehensive scheme which generally governs tort actions against governmental entities. Cruse, 922 S.W.2d at 496.

As previously stated, the courts below found the City of Westmoreland amenable to suit in this case pursuant to Tenn. Code Ann. § 29-20-204 (1980 Repl.), which provides as follows:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.
>
> (b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302.

In this Court, the City argues that because it had neither actual nor constructive notice of the dangerous or defective condition of the fire hydrants, it is not liable to the plaintiffs. The City argues that the lower courts erred in basing their

finding of constructive notice upon the City's failure to inspect the hydrants since governmental immunity under the GTLA specifically is not waived for injuries arising "out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property." Tenn. Code Ann. § 29-20-205(4) (1980 Repl. & Supp. 1997). The City also argues that it is not liable to the plaintiffs because the closed valves and inoperable fire hydrants were "latent defective conditions" for which it retains immunity from suit under the GTLA.

The plaintiffs respond that the City should be charged with constructive notice since the closed valves and inoperable hydrants would have been discovered had the City discharged its duty to inspect the hydrants following their installation and over the course of the ensuing two and one-half years. While agreeing that the City may not be held liable for injuries resulting from a failure to inspect, the plaintiffs nevertheless argue that the City's failure to inspect can and should be considered in determining whether the City had constructive notice of the dangerous or defective condition which resulted in the loss of their home. The plaintiffs also argue that this case does not involve "latent defective conditions" for which the City retains immunity because the closed valves and inoperable fire hydrants could have been discovered by a reasonably careful inspection.

In resolving these issues, we review the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of the correctness of the findings unless the evidence preponderates against the findings. We review questions of law *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); <u>Lucius</u>, 925 S.W.2d at 524.

## A. Constructive Notice

Under Tenn. Code Ann. § 29-20-204, the Legislature specifically made the removal of governmental immunity conditional upon a plaintiff's allegation and proof that the governmental entity knew or should have known of the dangerous or defective condition which caused the plaintiff's injury. Smith v. City of Covington, 734 S.W.2d 327, 329 (Tenn. App. 1985). In other words, a plaintiff must allege and prove that the governmental entity had either actual or constructive notice of the dangerous or defective condition. Since the parties in this case have agreed that the City did not have actual notice, we must determine whether the lower courts erred in concluding that the City had constructive notice of the closed valves and inoperable fire hydrants.

"Constructive notice" has been defined by this Court as "'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" Kirby v. Macon County, 892 S.W.2d 403, 409 (Tenn. 1994), quoting Black's Law Dictionary, 1062 (6th ed. 1990). Applying that definition, a governmental entity will be charged with constructive notice of a fact or information, if the fact or information could have been discovered by reasonable diligence and the governmental entity had a duty to exercise reasonable diligence to inquire into the matter. Applying that rule to the circumstances of this case, it is clear that the lower courts correctly charged the City of Westmoreland with constructive notice of the closed valves and inoperable fire hydrants.

Although the closed valves were not visible without removing the cover from the underground chambers in which they were located, the City would have discovered the valves were closed if it had fulfilled its duty to exercise reasonable diligence. The fire hydrants were installed by direction of and contract with the City as part of a water system improvement project. Once the project was completed, the City engaged another company to test and inspect the project. The inspector admitted, however, that each individual hydrant was not tested. Moreover, during the inspection, three leaks were detected in the Rainbow Circle area of the City. The inspector admitted that he would have closed the underground valves if, during the test of the system, the fire hydrants were leaking. Though the inspector testified that all of the leaks eventually were repaired, the log book reflects that only one of the three leaks were repaired, leaving two leaks unrepaired and, potentially, two underground valves closed. According to the trial evidence, the fire hydrants at issue in this appeal were the only two inoperable fire hydrants in the Rainbow Circle area and indeed, in the whole City of Westmoreland. This proof clearly supports the lower courts' finding that the City should have discovered the closed valves and inoperable fire hydrants as a result of the initial inspection of the water system improvement project and therefore should be charged with constructive notice of the dangerous or defective condition. There is also proof in the record that the City would have discovered the closed valves if it had followed proper flushing procedures as required by state law. In sum, the proof fully supports and does not preponderate against the lower courts' finding that the City had constructive notice of the dangerous or defective condition of the hydrants.

The City contends that basing the finding of constructive notice upon its failure to inspect the hydrants is error because governmental immunity is not waived for injuries arising "out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property." Tenn. Code Ann. § 29-20-205(4) (1980 Repl. & Supp. 1997). We disagree. Section 205(4) provides immunity from suit when a governmental entity negligently fails to discharge an existing duty to inspect property not owned by the City, and thereafter, injuries arise from dangerous or defective conditions on such property which would have been discovered had the governmental entity conducted an adequate inspection. In evaluating whether a plaintiff may establish constructive notice under Section 204 by proof that a governmental entity failed to adequately discharge its duty to inspect, we are not bound by Section 205(4) which provides immunity from suit for injuries resulting from "a failure to make an inspection, or by reason of making an inadequate inspection." Any authority to the contrary is hereby overruled.[5]

Section 204, upon which the plaintiffs in this case rely, clearly provides that a governmental entity is subject to suit for injuries that result from a dangerous or defective condition existing on publicly owned and controlled property or improvements if the governmental entity has actual or constructive notice of the condition. Proof that a governmental entity failed to adequately inspect property or improvements which it owned and controlled is directly relevant to the question of whether it had constructive notice of the dangerous or defective condition resulting in injury. To hold as the City suggests, and preclude the plaintiffs from establishing constructive notice under Section 204(b) by proof that the dangerous or defective

---

[5]Jones v. City of Johnson City, 917 S.W.2d 687 (Tenn. App. 1995); Mowdy v. Kelly, 667 S.W.2d 489 (Tenn. App. 1983).

condition would have been discovered had the governmental entity discharged its duty to inspect the premises under its control, would have the effect of requiring proof of actual notice in every case. Such an interpretation is contrary to the plain language of Section 204 which allows a recovery upon a showing of <u>either</u> actual or constructive notice. Therefore, basing the finding of constructive notice in this case upon the plaintiffs' proof that the City failed to inspect the fire hydrants is not error.

## B. Latent Defective Conditions

The City also argues that it is immune from suit because the plaintiffs did not prove that the closed valves and inoperable fire hydrants were *patently* defective conditions rather than latent defective conditions. We disagree.

The most basic principle of statutory construction is to ascertain and give effect to legislative intent. <u>Owens v. State</u>, 908 S.W.2d 923, 926 (Tenn. 1995). Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would <u>limit</u> or extend the meaning of the language. <u>Carson Creek Vacation Resorts, Inc. v. State, Dept. of Revenue</u>, 865 S.W.2d 1, 2 (Tenn. 1993) (emphasis added). If the legislative intent is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or constructions, and courts are not at liberty to depart from the words of the statute. <u>Id.</u> Where the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, "to say sic lex scripta, and obey it." <u>Id.</u>, quoting <u>Miller v. Childress</u>, 21 Tenn. (2 Hum.) 319, 321-22 (1841).

The GTLA provides that "[i]mmunity is not removed for latent defective conditions," Tenn. Code Ann. § 29-20-204(b) (1980 Repl.), the Act does not condition the removal of immunity upon proof that injury resulted from a *patently* dangerous or defective condition. The City's argument that immunity is removed only if a plaintiff proves that the injuries resulted from a patently defective condition is contrary to the plain language of the statute and is without merit.

Moreover, "latent defect" has been defined as "[a] hidden or concealed defect. One which could not be discovered by reasonable and customary inspection." Black's Law Dictionary, 794 (5th ed. 1979). The Utah Supreme Court, in construing a statute which, like our own, provided that governmental "[i]mmunity is not waived for latent defective conditions," also held that a latent defect is "[a] defect which reasonably careful inspection will not reveal." Vincent v. Salt Lake County, 583 P.2d 105, 107 (Utah 1978). The closed valves and inoperable fire hydrants in this case could have been discovered by reasonable and customary inspection. Accordingly, as a matter of law, they were not latent defective conditions for which the City retained immunity.

## CONCLUSION

The evidence in this record supports the lower courts' finding that the City had constructive notice of the closed valves and inoperable fire hydrants which resulted in the total fire loss of the plaintiffs' home. Accordingly, the judgment of the Court of Appeals upholding the trial court's judgment in favor of the plaintiffs is hereby affirmed.

_____
FRANK F. DROWOTA III
JUSTICE

**Concur:**
Anderson, C. J.
Reid, Birch, Holder, JJ.

-15-