IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2012 Assigned on Brief

MARTHA McCORMICK
v.
WARREN COUNTY BOARD OF EDUCATION

Appeal from the Circuit Court of Warren County
No. 2437  Buddy D. Perry, Judge

No. M2011-02261-COA-R3-CV - Filed January 15, 2013

This appeal involves a GTLA claim for personal injuries arising out of alleged negligence. The plaintiff suffered personal injuries after falling in a hole in a school football field. The plaintiff filed this lawsuit against the defendant board of education alleging negligence by failure to maintain the school premises and failure to warn. As defenses, the defendant board of education asserted governmental immunity and comparative fault. After a bench trial, the trial court held that the board of education had constructive notice of the hole in the football field and so did not have governmental immunity, and awarded the plaintiff monetary damages. The board of education now appeals, challenging the trial court's holding on governmental immunity and arguing the plaintiff's comparative fault. We affirm the trial court's holding as to governmental immunity, but remand on the issue of comparative fault for findings of fact and conclusions of law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in
Part and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Ricky L. Stacy, McMinnville, Tennessee, for Defendant/Appellant, Warren County Board of Education

Sonya W. Henderson, Murfreesboro, Tennessee, for Plaintiff/Appellee, Martha McCormick

## OPINION

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Martha McCormick ("McCormick") was born in Warren County, Tennessee in 1943 and has lived there her entire life. She has raised six children and several grandchildren. On May 13, 2005, McCormick attended the ceremony for her granddaughter's graduation from Warren County High School, held at Nunley Stadium in McMinnville, Tennessee. The Stadium adjoined a football field with a track around it, and the football field stood between the Stadium and the parking lot where the family's cars were parked. After the ceremony ended at approximately 7:30 or 8:00 p.m., McCormick, her daughters, and two grandsons walked across the football field to return to the parking lot. As McCormick and her family crossed the football field, she walked around a drainage grate in the field and stepped into a large hole near the grate. In doing so, McCormick fractured her left ankle. She was immediately taken to the local hospital's emergency room.

A few days later, McCormick visited orthopaedist Donald M. Arms, M.D. ("Dr. Arms"), who examined her fractured ankle. Dr. Arms gave McCormick pain medication and had her wear a medical boot for six weeks. By August 2005, McCormick was able to resume her regular activities.

Several months later, in April 2006, McCormick sustained a second fracture to her left ankle, in approximately the same place as the first fracture. She returned to Dr. Arms for this second fracture. He again had her wear a medical boot for another six to eight weeks.

In May 2006, McCormick filed this lawsuit against Defendant/Appellant Warren County Board of Education ("Board") in the Circuit Court of Warren County, Tennessee. The lawsuit alleged negligence for failing to maintain the school football field in a reasonably safe condition and failing to adequately warn of the dangerous hole in the field. McCormick sought $100,000 in compensatory damages based on her medical bills, her inconvenience, permanent loss of enjoyment of life, mental anguish, and pain and suffering. In its answer, the Board denied any negligence. As affirmative defenses, the Board asserted, *inter alia,* all available defenses under the Tennessee Governmental Tort Liability Act (GTLA). Discovery ensued.

In June 2008, the Board filed a motion for summary judgment. In the motion, the Board argued that the hole in the football field was covered with grass and thus was a latent defective condition; consequently, it was immune from liability under the GTLA. In response, McCormick argued that there were questions of fact regarding the hole and filed

the deposition of school athletic director Andrew Jacobs in support of her response.[1] In July 2010, the trial court denied the motion for summary judgment.

In May 2011, the Board filed a motion to amend its answer to assert comparative fault as an affirmative defense. The Board noted that other walkways were available to McCormick but she nevertheless chose to walk through an "obvious drainage area." The Board filed its amended answer on the day the trial commenced, but for reasons that are not apparent from the record, the agreed order permitting the amended answer, stating that the Board "shall file its First Amended Answer following entry of this Order but prior to trial," was not entered until August 5, 2011, over a month after the trial took place.

The trial court conducted a bench trial on June 14, 2011. It heard testimony from three witnesses and also considered the deposition of McCormick's orthopaedist, Dr. Arms.

At trial, McCormick testified that she had walked across the football field with her grandchildren many times before the evening in question, and that other people who had attended the graduation ceremony were walking across the football field as well. McCormick acknowledged that she could have gotten to the parking lot by walking "all the way around," walking on a bank, or around the track; she conceded that some of the other attendees took such a route, but noted that it was considerably farther than crossing the football field. McCormick testified that the majority of the attendees walked across the grass on the football field, as she did.

McCormick explained that, while walking across the football field, she saw the drainage grate in the grass and walked around it, only to step into the hole near the grate. McCormick could not recall if she saw the hole before stepping into it: "I really wasn't looking down, you know. I don't think. It's been so long ago." When she crossed the football field to get to the graduation ceremony, McCormick was unaware of the hole in the field, no one mentioned anything about it to her and she did not notice either the hole or the drainage grate. Shown photographs of the hole, McCormick testified that it was so deep that when she fell in, it came almost up to her knee.

At the time of the accident, McCormick was not working outside the home. After the accident, she testified, she was unable to do anything for herself even inside her home, such as getting to the bathroom, cooking, and cleaning. For four or five weeks after the accident, a family member had to be with her "practically all the time." McCormick said that the fractured ankle left her in a lot of pain.

---

[1]As discussed below, this deposition is not contained in the record on appeal.

Eight weeks after her fall on the football field, McCormick was able to resume her normal activities, even though her injured ankle remained weak. In April 2006, less than a year after the accident, McCormick walked off the back steps of her home, set her weak foot down first, and the same ankle broke again. McCormick was once again placed in a medical boot for six to eight weeks, and family members had to assist her during this second recovery. Because of the two incidents, McCormick had a total of about four months in which she could not perform everyday tasks and required assistance from family. By the time of trial, McCormick was fully healed, but her injured ankle caused her mild pain from time to time. She took care to always have her cell phone with her, even going to the mailbox, for fear of falling again.

The trial court also heard testimony from McCormick's daughter, Angela McCormick ("Angela"). Angela had attended three or four other graduation ceremonies at Nunley Stadium and corroborated McCormick's testimony that most attendees walk across the football field to get between the Stadium and the parking lot. She said that the grass around the hole "wasn't real tall" but was "just like your yard or something." Angela testified that she and other family members took care of McCormick while she recovered from her injury, adding, "[s]omebody had to be with her."

Another one of McCormick's daughters, Nancy Knowles ("Knowles"), testified as well. She reiterated the testimony by McCormick and Angela that persons attending graduation ceremonies at Nunley Stadium frequently cross the football field between the Stadium and the parking lot and said there were no guides directing attendees to use another route. Knowles confirmed that the hole was in a mowed area of the football field. She saw her mother fall into the hole. Knowles corroborated the earlier testimony regarding the care McCormick required from her children while she was recovering from her initial injury. Even after McCormick recovered, Knowles said, she continued to experience occasional pain and remained unsteady on her feet.

McCormick also submitted into evidence the deposition testimony of Dr. Arms. Dr. Arms confirmed that McCormick fractured her left ankle in May 2005 by stepping in the hole on the football field. He prescribed narcotics for her pain and had her wear a boot for several weeks. He said that her fracture lined up appropriately and was healing. Generally, Dr. Arms said, patients with this type of injury can be left with intermittent instability and swelling.

In April 2006, Dr. Arms testified, McCormick returned to his office after she fell at her home and broke the same ankle a second time. He said that she had rebroken her left ankle in the same place, stating, "it's essentially . . . the same old fracture." This fracture was treated in

the same manner as the first. He gave McCormick no specific impairment rating, but said that persons with these injuries often have permanent residual weakness and loss of balance. Dr. Arms was unwilling to testify to a reasonable degree of medical certainty that the second fracture was related to the first:

> I can't with any medical probability say that the second injury would or would not have occurred with or without the first one, meaning I think they are two separate events caused by two separate traumatic episodes. And the second ankle fracture was probably just as likely to have happened without the first. So the odds are 50-50. I can't say that I'm 51 percent sure that they are related.

Dr. Arms also confirmed that McCormick's medical bills in the amount of $3,586.38 were reasonable, necessary, and customary for treatment of this type of injury.[2] In the future, Dr. Arms predicted, McCormick will "intermittently require medication options, [and] intermittent brace wear . . . . She'll note increased discomfort with weather change or overuse," but would not require surgery.

That concluded McCormick's evidence. The Board offered no witnesses of its own and rested its case at the conclusion of the plaintiff's proof. The trial court instructed counsel for both parties to submit proposed findings of fact and conclusions of law and took the matter under advisement.

On September 26, 2011, the trial court entered its order on the trial, setting forth its findings of fact and conclusions of law. In the order, the trial court rejected the Board's argument that it should be immune from liability under the GTLA because the hole in the football field was concealed by grass and thus was a latent defect:

> The board's counsel[] argue[s] that the hole was concealed by grass, and is, therefore a latent defect. Consequently, counsel[] insists that the county by statute is immune from suit. Plaintiff's counsel argues:

---

[2]The transcript of Dr. Arms' deposition indicated that a total of $26,092.50 was reasonable for the total cost of treatment for McCormick's fractured ankle. It appears that this figure was an error in transcription; other exhibits in the record indicate that the total amount spent on office visits, braces, and the like for McCormick's treatment was actually $2,692.50. Additionally, another $836.04 was spent on emergency services and $57.84 on crutches for McCormick, for a combined total of $3,586.38 spent on medical expenses for both ankle injuries.

Although the Supreme Court does not explicitly state the relationship between constructive notice and latent defect issues in GTLA cases, it appears contradictory to hold that a Defendant had constructive notice, while concurrently ruling that the condition was a latent defect, or one which could be discovered by reasonable and customary inspection. Therefore either the condition could have been discovered by reasonable inspection, which would warrant constructive notice of a patently defective condition, or the condition could not have been discovered by a reasonable inspection, which would imply that the Defendant had no notice and the condition would qualify as a latent defect.

I agree with the plaintiff's contention that the hole in which the plaintiff stepped in should have been discovered by reasonable inspection, due to the regular use of, and maintenance conducted on the premise [sic] by the defendant.

Referring to "the photographs attached to the deposition of Andy Jacobs," the trial court made a factual finding that "the hole was too wide and too deep not to be seen or noticed in any way by the Defendant prior to Plaintiff's fall." It noted that the Board's employees and other agents had maintained the football field where the hole developed and held that the Board owed a duty of care to maintain the premises in a reasonably safe manner. The trial court also found that the Board had superior knowledge of the premises and, had it done a reasonably careful inspection, it should have discovered the hole in the football field. On this basis, the trial court held that the Board had constructive notice of the defective or dangerous condition, namely, the hole. Thus, the trial court held, the Board breached its duty of care to invitees such as McCormick, by failing to inspect the premises in a reasonably careful manner.

Based on these findings of fact and conclusions of law, the trial court ordered the Board to pay McCormick $8,500 in unspecified damages.[3] It also assessed costs against the Board. The Board now appeals.

---

[3]The trial court made no express finding on the Board's liability for McCormick's second ankle injury sustained by McCormick or whether the $8,500 judgment included compensation for permanent impairment. Neither of these issues have been raised on appeal, so we do not address them.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Board raises two issues:

> I. Whether the concealed hole in the football field at Nunley Stadium constitutes a latent defective condition under Tennessee law for which Appellant Warren County Board of Education retains immunity from suit pursuant to T.C.A. § 29-20-204(b).

> II. Whether the trial court erred in failing to allocate any fault to Appellee Martha McCormick under the affirmative defense of comparative fault.

Because this matter was decided by the trial court without a jury, the trial court's findings of fact are reviewed *de novo* on the record, with a presumption that those findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). For the evidence to preponderate against the trial court's factual finding, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 70-71 (Tenn. Ct. App. 2000); *Realty Shop v. RR Westminster Holding.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424-25 (Tenn. Ct. App. 2005). It is also well settled that a trial court's assessment of witness credibility is entitled to great weight on appeal because the trial court saw and heard the witness testify; thus, we defer to the trial court's assessment on credibility absent clear and convincing evidence to the contrary. *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676 (Tenn. Ct. App. 2007).

## ANALYSIS

### Governmental Immunity

The Board argues first that it is immune from liability under the GTLA. The Board does not appear to challenge the trial court's finding that the hole in the football field was a defective or dangerous condition.[4] It contends that the hole was a latent defective condition, and that the evidence does not support the trial court's finding that the Board had constructive notice

---

[4]Likewise, the Board does not dispute the trial court's findings that the Board is a governmental entity and the football field in question is a public improvement owned by the Board. Tenn. Code Ann. § 29-20-204(a); *see Petty v. City of White House*, No. M2008-02453-COA-R3-CV, 2009 WL 2767140, at *5; 2009 Tenn. App. LEXIS 599, at *12-14 (Tenn. Ct. App. Aug. 31, 2009) (classifying a field owned and maintained by a city as a "public improvement").

of the hole. For these reasons, the Board maintains that the trial court erred in concluding that it was not immune from liability under the GTLA.

The GTLA provides that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a) (2008). Governmental immunity, however, can be removed under certain circumstances. *Helton v. Knox County, Tenn.*, 922 S.W.2d 877, 881-82 (Tenn. 1996); *Petty v. City of White House*, No. M2008-02453-COA-R3-CV, 2009 WL 2767140, at *4; 2009 Tenn. App. LEXIS 599, at *10-11 (Tenn. Ct. App. Aug. 31, 2009). Pertinent to this appeal, under Tennessee Code Annotated § 29-20-204, governmental immunity for liability for a dangerous or defective condition may be removed under the following circumstances:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.
>
> (b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved . . . .[5]

Tenn. Code Ann. § 29-20-204 (2012). Thus, McCormick may recover against the Board if she is able to prove that the preponderance of evidence establishes that the hole in the football field was not a latent defective condition, and that the Board had constructive notice of the dangerous or defective condition.[6] *See Wright v. City of Lebanon*, No. M2010-00207-COA-R3-CV, 2011 WL 721508, at *2; 2011 Tenn. App. LEXIS 99, at *6 (Tenn. Ct. App. Mar. 1, 2011); *Barnett v. Gallatin Dept. of Energy*, No. 01-A-01-9104-CV-000134, 1991 WL 213207, at *2; 1991 Tenn. App. LEXIS 833, at *3 (Tenn. Ct. App. Oct. 23, 1991).

---

[5] Section 29-20-204(b) refers to the procedural notice requirements in Tennessee Code Annotated § 29-20-302. However, Section 29-20-302 has since been repealed. *See* 1987 Pub. Acts. c.405, § 7.

[6] There is no evidence in the record that the Board had actual notice of the hole in the football field, so the issue on appeal involves only constructive notice.

*Latent Defective Condition*

The Board argues that the evidence preponderates against the trial court's finding that the hole in the football field was not a "latent defect" within the meaning of Section 29-20-204(b). Because the evidence showed that the hole was completely concealed by grass, the Board argues, reasonable inspection in the course of the regular use and maintenance of the property would not have led to discovery of it. It cites ***Waddell v. Greenelawn Memory Gardens, Inc.*** in support of its contention that a hole on a piece of land that is "concealed by vegetation" constitutes a latent defect. ***See Waddell v. Greenelawn Memory Gardens, Inc***., No. E2008-02522-COA-R3-CV, 2009 WL 2877290, at *14; 2009 Tenn. App. LEXIS 610, at *10 (Tenn. Ct. App. Sept. 8, 2009) (reversing grant of summary judgment and finding disputed issue of fact as to whether obscured hole was latent defect).

A latent defect under Section 29-20-204(b) has been defined as "[a] hidden or concealed defect . . . which could not be discovered by reasonable and customary inspection" and as "[a] defect which reasonably careful inspection will not reveal." ***Hawks v. City of Westmoreland,*** 960 S.W.2d 10, 17 (Tenn. 1997) (quoting ***Black's Law Dictionary*** 794 (5th ed. 1979) and ***Vincent v. Salt Lake County***, 583 P.2d 105, 107 (Utah 1978)); ***Wright***, 2011 WL 721508, at *8; 2011 Tenn. App. LEXIS 99, at *23. We consider the evidence and the Board's argument with this definition in mind.

Although ***Waddell***, cited by the Board, involves a lawsuit in which the plaintiff sued for personal injuries sustained after falling in a hole on the defendant's property, we find that it is not helpful in determining the issue presented by the Board in this appeal. In ***Waddell***, the trial court granted summary judgment in favor of the defendant landowner, citing the plaintiff's statements that he was aware that the unimproved property was unsafe to walk on and evidence that a sidewalk was available to the plaintiff. After the plaintiff appealed, the appellate court found that summary judgment in favor of the defendant was inappropriate in light of evidence that the hole, in a "a solid pile of rocks/cinderblock/debris," was obscured by vegetation and that the sidewalk route was not a viable option for the plaintiff under the circumstances of the case. ***See Waddell***, 2009 WL 2877290, at *1; 2009 Tenn. App. LEXIS 610, at *2-4. Thus, ***Waddell*** concluded that the evidence of vegetation obscuring the hole on the premises created a disputed issue of fact as to whether the plaintiff should have seen the hole and whether the defendant should have warned the plaintiff of it. In the case at bar, we are not presented with a ruling on a summary judgment motion but rather with a finding of fact based on evidence submitted at trial. So the holding in ***Waddell,*** that the vegetation covering the hole created an issue of fact on whether the hole was a latent defect, does not assist us in assessing the preponderance of the evidence presented at trial in this case.

The Board insists that this Court should hold that the hole in the football field "constitutes a latent defect as a matter of law for which immunity is not removed," pointing to the

undisputed fact that the hole had grass growing in it and around it, and the fact that plaintiff McCormick did not see the hole while walking through the football field. We decline to hold that the hole in the football field was, as a matter of law, a latent defect. The evidence at trial included testimony by McCormick's daughters that the hole was located in a mowed area and that the grass around the hole "wasn't real tall" and was "just like your yard or something." The Board put on no evidence contradicting their testimony and it was apparently credited by the trial court. McCormick's testimony was inconclusive at best; she testified that she could not recall whether she could see the hole, and said that she was not looking down at that time that she fell. Finally, the record includes the photographs of the hole in the football field that were submitted into evidence, which this Court reviews in the same manner as the trial court. *See Ingram v. Wasson*, 379 S.W.3d 227, 237 (Tenn. Ct. App. 2011). After reviewing the evidence in the record as a whole, we cannot conclude that it preponderates against the trial court's holding that the hole in the football field was not a "latent defective condition" within the meaning of Section 29-20-204(b).

### *Constructive Notice*

The Board also contends that the trial court erred in holding that the Board should have discovered the defective and dangerous condition on the premises – the hole in the football field – with reasonably careful inspection, and therefore had constructive notice of it. It argues vigorously that this holding is not supported by the proof in the record. The Board maintains that no proof was presented concerning how the field was used in Fall 2004 other than for football games and the graduation ceremony McCormick attended, and that there was no proof regarding the last time the property had been used, the maintenance schedule of the property, or how long the hole had existed. The Board contends that the trial court could only have held that the hole McCormick stepped in "should have been discovered by reasonable inspection, due to regular use of [], and maintenance conducted on the premise by defendant" by assuming facts not in the record. For this reason, the Board contends that the evidence preponderates against the trial court's holding that the Board had constructive notice of the hole, that it failed to maintain and inspect the premises in a reasonably safe manner, and that it breached its duty of care to invitee McCormick.

In a case such as this, the question of constructive notice of a defective or dangerous condition is related to the question of whether the condition constitutes a latent defective condition; the two are essentially flip sides of the same coin. Tennessee cases define constructive notice as "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such to cast upon him the duty of inquiring into it." *Hawks*, 960 S.W.2d at 15 (quoting *Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994)); *Petty,* 2009 WL 2767140, at *6; 2009 Tenn. App. LEXIS 599, at *16. "Proof that a governmental entity failed to adequately inspect property or improvements which it owned

and controlled is directly relevant to the question of whether it had constructive notice of the dangerous or defective condition resulting in injury." ***Hawks***, 960 S.W.2d at 16; ***Wright***, 2011 WL 721508, at *7; 2011 Tenn. App. LEXIS 99, at *19 ("Constructive notice depends not on when an injury occurs but on when a governmental entity fails to exercise reasonable diligence."). As stated above, the issue of whether the Board in this case had constructive notice of the hole is a question of fact. ***Petty,*** 2009 WL 2767140, at *6; 2009 Tenn. App. LEXIS 599, at *17 (citing ***Reed v. Greene County***, No. E2004-00090-COA-R3-CV, 2005 WL 100843, at *4; 2005 Tenn. App. LEXIS 19, at *13 (Tenn. Ct. App. Jan. 19, 2005)).

At the outset, we note that the deposition of the school's athletic director, Andrew Jacobs, was apparently filed in connection with the Board's pre-trial motion for summary judgment, but was not included in the appellate record before this Court. The appellate record contains a "notice of filing" of the deposition and related exhibits and attachments, and it is referred to in McCormick's response to the Board's summary judgment motion.[7] McCormick's response to the Board's summary judgment motion contains McCormick's statement of undisputed facts, including the following:

> 12. The depressed area around the drain gate was located inside the asphalt track of Nunnelly Stadium. (Deposition of Andrew Wesley Jacobs, hereinafter referred to as "Dep. A.J.", pp. 10-11).
> 13. All those who performed ground maintenance upon the specific area of the stadium inside the track were paid employees of the Defendant. (Dep. A.J. pp. 10).
> 14. The area of the football field inside the track was mowed between one and three times per week around the time of the accident on May 13, 2005. (Dep. A.J. pp. 16).

The record does not contain any indication that the Board filed a response asserting that the material undisputed facts as presented by McCormick, citing Jacobs' deposition, were either inaccurate or disputed. ***See*** Tenn. R. Civ. P. 56.03. The trial court's September 2011 order, with its findings of fact and conclusions of law, refers to the photographs attached to Jacobs' deposition. The appellate record includes photographs of the subject hole, but it is not clear whether the photographs in the record are the same photographs that were made exhibits to Jacobs' deposition. No issue on appeal is raised as to the trial court's consideration of Jacobs' deposition in making its findings of fact and conclusion of law.

---

[7]McCormick's appellate brief contains citations to Jacobs' deposition and summarizes his testimony, which purportedly explained the maintenance and mowing schedules for the football field and who was responsible for overseeing the condition of the field. Arguments in the appellate briefs are not evidence, so we decline to consider the summary of Jacobs' deposition testimony contained in the appellate briefs.

In evaluating whether the trial court's findings are supported by a preponderance of the evidence, it is incumbent upon this Court to consider all of the evidence that was available to the trial court. Even if Jacobs' deposition was not transmitted to this Court as part of the appellate record, it is apparent that it was made available to the trial court, as well as the material undisputed facts asserted by McCormick, taken from Jacobs' deposition testimony and not disputed by the Board. Consequently, in evaluating whether the trial court's findings are supported by a preponderance of the evidence, we consider the entirety of the evidence available to the trial court.

Considering the testimony of the witnesses, the photographs in the appellate record, and the entirety of the evidence available to the trial court, we cannot find that the evidence preponderates against the trial court's findings that the Board's employees and agents maintained the football field, that they had superior knowledge of the premises and a duty to invitees such as McCormick to inspect and maintain the premises in a reasonably safe manner, and that the subject hole was of a width and depth that the Board or its agents should have discovered it before McCormick's fall. Considering the record as a whole, we cannot conclude that the trial court erred in holding that the Board had constructive notice of the dangerous condition and thus was not immune from liability under the GTLA.

**Comparative Fault**

In the alternative, the Board notes that it asserted comparative fault as an affirmative defense and contends that the trial court erred in failing to allocate any fault to McCormick. The Board observes that McCormick admitted that she was not looking down when she fell into the hole in the football field and argues that this was negligence that should have been taken into account in the trial court's decision. The Board also notes the undisputed evidence that there were other safer walkways available to McCormick, but she nevertheless chose to walk "in an obvious drainage area without paying attention to where she was walking." This, the Board argues, constitutes fault by McCormick that should have been a factor in the trial court's decision.

The apportionment of fault in a negligence case is a question of fact. ***Hocker v. State***, No. E2008-02638-COA-R3-CV, 2009 WL 3518164, at *6; 2009 Tenn. App. LEXIS 735, at *6 (Tenn. Ct. App. Oct. 30, 2009); ***Wilson v. Pickens***, 196 S.W.3d 138, 143 (Tenn. Ct. App. 2005). In this appeal, we are asked to review the trial court's allocation of fault. While the trial court made explicit findings of fact and conclusions of law on numerous other issues presented in the case, it made no express findings on comparative fault. The Board raised the affirmative defense of comparative fault in an amendment to its answer; the amended answer was filed the day the trial began, and an agreed order allowing the amendment was

entered.[8]    The trial included testimony pertinent to the issue of comparative fault, such as McCormick's admission in her testimony that there were other walkways available to her and that she was not looking at the ground at the time she fell into the hole in the football field. Despite this, no express findings were made on whether McCormick had some degree of fault for her injuries.

Moreover, the trial court simply awarded McCormick damages in the amount of $8500, with no explanation as to how it arrived at this amount. The damages awarded are more than McCormick's medical expenses but less than the amount of damages McCormick sought against the Board. There is no indication as to whether the trial court's award reflects an implicit finding of comparative fault against McCormick.

In a bench trial, the Tennessee Rules of Civil Procedure require trial courts to issue findings of fact and conclusions of law. Rule 52.01 of the Tennessee Rules of Civil Procedure provides:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. . . .

Tenn. R. Civ. P. 52.01 (2012).[9]    The legislature's decision to require findings of fact and conclusions of law is "not a mere technicality." ***Paul v. Watson***, No. W2011-00687-COA-R3-CV, 2012 WL 344705, at *5; 2012 Tenn. App. LEXIS 65, at *14-15

---

[8]On appeal, McCormick argues that the appellate court should not consider the issue of comparative fault because she was not specifically identified in the pleading that asserts comparative fault, as required under Rule 8.03 of the Tennessee Rules of Civil Procedure; the Board's answer incorrectly referred to the allegedly negligent actions of the Defendant rather than of the Plaintiff. McCormick also argues that she was not given either the time or the opportunity to rebut the allegations that she was at fault, because the amended answer was submitted on the day of trial. We note that the order granting the Board permission to file an amended answer that asserted comparative fault, entered after the conclusion of the trial, was an "agreed order" signed by McCormick's counsel. McCormick does not dispute that her attorney consented to the amended answer, so we consider these issues raised by McCormick to be waived.

[9]Prior to July 1, 2009, trial courts were required to make specific findings of fact and conclusions of law only "upon request made by any party prior to the entry of judgment." ***See Poole v. Union Planters Bank N.A.***, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). As amended, Rule 52.01 requires the trial court to make these findings, even if neither party requests them. ***Id.***

(Tenn. Ct. App. Feb. 2, 2012) (citing *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8; 2009 Tenn. App. LEXIS 225, at *20-23 (Tenn. Ct. App. May 15, 2009)). It serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.* (citing *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990)). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *Paul*, 2012 WL 344705, at *5; 2012 Tenn. App. LEXIS 65, at *14-15; *In re K.H.*, 2009 WL 1362314, at *8 ; 2009 Tenn. App. LEXIS 225, at *20-23 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19, 2004 Tenn. App. LEXIS 250, at *58 (Tenn. Ct. App. April 21, 2004)).

In the absence of findings of fact and conclusions of law on the Board's defense of comparative fault, we are unable to effectively review the trial court's allocation of fault. Under these circumstances, we are left with little choice but to remand the case for findings of fact and conclusions of law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure on the issue of comparative fault.

## CONCLUSION

The decision of the trial court is affirmed in part and remanded for further proceedings consistent with this opinion. Costs on appeal are assessed against Defendant/Appellant Warren County Board of Education and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE
