FILED

11/03/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2017 Session

## ANTHONY HOLDER, ET AL. v. SHELBY COUNTY TENNESSEE

**Appeal from the Circuit Court for Shelby County**
**No. CT-001752-14   Valerie L. Smith, Judge**

_____

### No. W2017-00609-COA-R3-CV

_____

This is the second appeal of this governmental tort liability action. After his son committed suicide while in custody at the Shelby County Jail, Appellee filed suit against the Appellant Shelby County for negligence under a theory of vicarious liability. On remand from this Court, the trial court held a bench trial and determined that Appellant's employee's failure to perform wellness checks was negligent conduct but not intentional. Accordingly, the trial court held that Appellant was not immune from suit under the Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205, and entered judgment in favor of Appellee. Shelby County appeals. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

John Marshall Jones, Memphis, Tennessee, for the appellant, Shelby County, Tennessee.

Bryan Matthew Meredith and Robert L.J. Spence, Jr., Memphis, Tennessee, for the appellee, Anthony Holder.

## OPINION

### I. Background

Appellee Anthony Holder is the father of Decardis Holder ("Decedent"). While Decedent was incarcerated in the Shelby County Jail, he committed suicide. Thereafter, Appellee filed suit, under the Governmental Tort Liability Act, Tennessee Code Annotated Section 29-20-101, *et seq.* ("GTLA"), against Appellant Shelby County,

alleging negligence in the death of Decedent. This is the second appeal of this case. The precipitating facts, as taken from the Appellee's amended complaint, are set out in our previous opinion, **Holder v. Shelby Co.**, No. 2014-01910-COA-R3-CV, 2015 WL 1828015 (Tenn. Ct. App. Apr. 21, 2015) ("**Holder I**"), to-wit:

> [Decedent] was involved in an automobile accident on April 20, 2013. The Memphis Police Department ("MPD") responded to the scene and [Decedent] was subsequently arrested. [Decedent] was charged with assault, failure to exercise reasonable care, "violation of financial law," leaving the scene of an accident involving injury, disorderly conduct, resisting arrest, and resisting official detention. The MPD transported [Decedent] to the Shelby County Jail, where he received a mental evaluation performed by agents of Shelby County. The evaluation revealed that [Decedent] suffered from a mental condition that caused him to be unstable and that he was a threat to himself and others. This evaluation was consistent with [Decedent's] diagnosis of mental illness, for which he was undergoing treatment at the time of the accident.

> Due to the diagnosis, [Decedent] was placed in a special jail housing unit for unstable inmates, designated the "N" housing unit. Inmates placed in the "N" unit are classified as mentally unstable. Shelby County policy dictates that guards perform a mandatory safety check of the inmates of the "N" unit at least every thirty minutes. On April 21, 2013, Deputy Melvin Moore was assigned to [Decedent's] unit between 2:00 p.m. and 10:00 p.m. At 9:16 p.m., Deputy Moore indicated that he checked the inmates and that they were all resting peacefully. Deputy Moore later admitted, however, that he did not make the safety check as documented in the log book and that he, in fact, could not recall the last time he observed [Decedent] living, breathing, or moving about. Indeed, Deputy Moore admitted that he failed to complete even one entire mandated safety check during his eight hour shift on April 21, 2013. Had proper safety checks been performed, nothing would have obstructed Deputy Moore's view of [Decedent's] cell. When later questioned about his failure to complete the mandatory safety checks, Deputy Moore stated that he could not recall the reason he failed to complete the safety checks; however, Moore publicly stated that "due to my negligence, a guy lost his life."

> After a shift change, Deputy Lorna Morris was assigned to [Decedent's] unit. At 10:14 p.m., Deputy Morris discovered [Decedent] hanging from a sheet in his cell. Deputy Morris obtained assistance to remove the sheet from [Decedent's] neck, and perform CPR. [Decedent] was warm and had a pulse, but was not breathing. Another Deputy that was present observed drool from [Decedent's] mouth; the Deputy described the

drool as having been there for "a while." [Decedent] was transported to Methodist Hospital–Central, where he eventually died from injuries related to asphyxiation.

*Holder I*, 2015 WL 1828015, at *1-2.  In *Holder I*, this Court reversed the trial court's grant of Shelby County's Tennessee Rule of Civil Procedure 12.02 motion to dismiss the case.  In its motion, Shelby County argued, *inter alia*, that its GTLA "immunity was not removed because Deputy Moore was not acting within the scope of his employment." *Id.* at *2.  By order of August 18, 2014, the trial court granted Shelby County's motion to dismiss.  Specifically, the trial court found that Appellee's "amended complaint failed to set forth any negligent acts of Shelby County, and that Deputy Moore was not 'on or about Shelby County's business at the time of his acts' because he was not hired to falsify logs." *Id.*  In *Holder I*, this Court reversed the trial court's grant of Appellant's motion to dismiss.  Specifically, we held that:

> [Appellee's] amended complaint contains the following relevant allegation: "The negligence of Deputy Moore set forth herein was committed by Deputy Moore within the course and scope of his employment."  Because this is a factual allegation, we must take it as true for purposes of Shelby County's motion to dismiss.  Thus, Appellant's amended complaint clearly alleges that Deputy Moore's negligence was committed within the scope of his employment.  Accordingly, the trial court erred in dismissing Appellant's amended complaint on the basis that Deputy Moore's actions were taken outside the scope of his employment.

*Id.* at *7.

Our holding, in *Holder I*, that Appellee's amended complaint stated a claim for relief under the GTLA was based on the scope of review applicable to Tennessee Rule of Civil Procedure 12.02 motions to dismiss.  Because a Rule 12.02 motion tests only the sufficiency of the complaint, the resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Id.* at *2 (internal citations omitted).  However, our holding that Appellee's pleadings were sufficient to survive Appellant's motion to dismiss did not amount to a substantive determination that Deputy Moore's actions were negligent, as opposed to intentional.  Accordingly, on remand from *Holder I*, the case proceeded to a bench trial before the trial court, with the question of whether Deputy Moore's actions were intentional or negligent being paramount to Shelby County's liability.  Following the trial, the trial court found that Deputy Moore's actions were negligent and that Shelby County was not immune from liability under the GTLA, *see* discussion *infra*.  On February 23, 2017, the trial court entered an order of judgment, in the amount of $300,000.00, against Shelby County.  Shelby County appeals.

## II. Issue

Shelby County raises the following issue for review as stated in its brief:

Whether the trial court erred in finding that Shelby County Jail corrections officer, Melvin Moore's failure to conduct wellness checks on inmate Decardis Holder was negligent, rather than intentional, conduct and therefore that Defendant/Appellant Shelby County, Tennessee is liable to Plaintiff/Appellee for the death of his son, Decardis Holder?

## III. Standard of Review

In an appeal from a bench trial, we review findings of fact de novo upon the record. Tenn. R. App. P. 13(d); *Hughes v. Metro. Gov't of Nashville and Davidson Cty.* 340 S.W.3d 352, 359 (Tenn. Ct. App. 2011). We presume the trial court's findings are correct, unless the evidence in the record preponderates otherwise. Tenn. R. App. P. 13(d). Questions of law are subject to de novo review with no presumption of correctness.

## IV. Discussion

The GTLA carves out exceptions to the general rule of sovereign immunity, which provides that "'suit may not be brought against a governmental entity unless that governmental entity has consented to be sued.'" *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001) (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997)); *see also* Tenn. Const. Art. I, § 17 (stating "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct"). As such, the GTLA provides a general rule of immunity from suit for any injury resulting from activities of governmental entities "engaged in the exercise and discharge of any of their functions, governmental or proprietary" except as specifically provided by the GTLA. Tenn. Code Ann. § 29-20-201(a); *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001). As is relevant to the instant appeal, the GTLA removes immunity for an injury "proximately caused by a negligent act or omission of any employee within the scope of his employment," but provides a list of exceptions to this removal of immunity, including certain enumerated intentional torts, if the injury arises out of them. Tenn. Code Ann. § 29-20-205. However, the GTLA provides that, before finding a governmental entity liable for damages, a court must find the following: (1) the acts of the employee were negligent and the proximate cause of plaintiff's injury; (2) the employee was acting within the scope of his employment; and (3) none of the exceptions outlined in Tennessee Code Annotated Section 29-20-205 of the GTLA apply.[1] Tenn. Code Ann. § 29-20-310(a). As set out in Appellant's issue, *supra*, the sole question in this case is whether

---

[1] None of the Tennessee Code Annotated Section 29-20-205 exceptions apply in the instant case.

Deputy Moore's actions were negligent or intentional; accordingly, we will not address criterion two, i.e., whether Deputy Moore was acting within the scope of his employment.

In arguing that Deputy Moore's actions were intentional (so as to retain Shelby County's sovereign immunity under the GTLA), Shelby County relies, *inter alia*, on the Tennessee Supreme Court's opinion in ***Hughes v. Metropolitan Government of Nashville and Davidson County***, 340 S.W.3d 352, 368 (Tenn. 2011), which we discussed in ***Holder I,*** to-wit:

> In ***Hughes***, the issue concerned whether immunity was removed with regard to injuries resulting from the operation of public works equipment by a government employee. ***Hughes***, 340 S.W.3d 352, 368-69 (Tenn. 2011). At the conclusion of a bench trial, the trial court ruled that although the employee "intended to drive the vehicle in a negligent or careless manner," the employee merely committed negligence. Thus, the trial court ruled that immunity was removed. ***Id.*** at 367-68.
>
> On appeal, the Tennessee Supreme Court was tasked with determining whether the injuries resulted from the employee's negligence, for which immunity was removed, or assault, for which immunity was not removed. ***Id.*** at 369. In determining that the employee committed the intentional tort of assault, the Court focused on the intent required to prove the tort of assault. The Court concluded that to commit the intentional tort of assault, the tortfeasor must intend "to create an apprehension of harm." ***Id.*** at 371. The trial court specifically found that the employee in *Hughes* intended to frighten the plaintiff, which finding was supported by the testimony of witnesses. Thus, the Court held that the intention element of the tort of assault had been met. ***Id.*** at 371-72. Accordingly, the Court concluded that the employee committed an intentional tort, for which immunity was not removed. ***Id.***

***Holder I***, 2015 WL 1828015, at *5. In ***Holder I***, we ultimately concluded that ***Hughes*** was not applicable insofar as the holding in ***Hughes*** was based on a full adjudication in the trial court and not on the grant of a dispositive motion such as the motion to dismiss presented in ***Holder I***. However, we clarified that, in determining whether a government employee's actions were intentional or negligent, "the employee's intent [is] the dispositive issue in determining whether negligence or an intentional tort was committed." ***Id.*** (citing ***Hughes***, 340 S.W.3d at 371; ***King v. Ross Coal Co.***, 684 S.W.2d 617, 620 (Tenn. Ct. App. 1984)) ("[I]t takes more than a mere inference of tortious intent to convert the defendant's negligence into an intentional tort.")). As we explained in ***Holder I***:

> "The distinguishing factor between intentional tortious conduct and

- 5 -

negligent conduct is that the intentional actor has the desire to bring about the consequences that follow or the substantial certainty that they will occur, while a negligent actor does not desire to bring about the consequences which follow, nor does he or she know that they are substantially certain to occur, or believe that they will; there is merely a risk of such consequences, sufficiently great to lead a reasonable person in his or her position to anticipate them, and to guard against them. Thus, the principal difference between negligent and intentional conduct is a difference in the probability, under the circumstances known to the actor and according to common experience, that certain consequence or a class of consequences will follow from a certain act."

*Id.* at \*6 (quoting 57A Am.Jur.2d Negligence § 30).

Based on the foregoing discussion, the gravamen of whether Deputy Moore acted intentionally or negligently rests on his intent and, specifically, whether Deputy Moore had "the desire to bring about the consequences [of Decedent's death]," or had "substantial certainty" that harm would come to Decedent by Deputy Moore's failure to perform wellness checks and/or his falsification of the log book. *Id.*

In its February 23, 2017 order, the trial court found that Deputy Moore did not intend to harm Decedent, or to otherwise bring about his death, to-wit:

21. Officer Melvin Moore did not have any desire that [Decedent] would suffer harm, he did not know [Decedent] would suffer harm, and he did not believe [Decedent] would suffer harm based on his failure to perform the wellness checks.

22. Officer Moore did not have any desire that [Decedent] would suffer harm, he did not know [Decedent] would suffer harm, and he did not believe [Decedent] would suffer harm based on the false entries he made in his log book.

23. When questioned about [Decedent's] death, Officer Moore, admitted that "due to my negligence, a guy lost his life."

24. The actions of Officer Melvin Moore in not conducting the wellness checks was [sic] negligent conduct and not intentional conduct.

Turning to the record, Deputy Moore's undisputed testimony supports the trial court's findings. In relevant part, Deputy Moore stated:

Q: Okay. Sir, on April 21st, 2013, when you failed to perform the wellness

checks on [Decedent], did you have any desire that [Decedent] would suffer harm?

A: No, sir.

Q: And when you failed to perform those wellness checks on [Decedent], did you know that [Decedent] would suffer any harm?

A: No, sir, I didn't know that.

Q: Did you believe that he would suffer any harm?

A: No, sir.

Having testified that it was not his desire to harm Decedent by failing to perform the required wellness checks, on cross-examination, Shelby County attempted to elicit proof that, given Decedent's mental state and the fact that he was being housed in the N-pod, Deputy Moore should have known that Decedent might attempt suicide if wellness checks were not performed, to-wit:

Q. Mr. Moore, the Shelby County Sheriff's Office trained you on making wellness checks on mentally unstable inmates, correct?

A. Yes, sir.

Q. You were supposed to at least walk to the cell and look in on the inmate, correct?

A. Yes, sir.

Q. And you were also trained to do a wellness check on mentally unstable inmates at the end of your shift, correct?

A. Yes, sir.

Q. And you understood that all of the inmates in N pod on April 21st, 2013, were classified as mentally unstable, correct?

A. Mentally unstable, but not suicidal.

Q. Including [Decedent], correct?

A. Yes, sir.

Q. And you understood, based on your training and based on Shelby County's policies, that those wellness checks were mandatory, correct?

A. Yes, sir.

In view of Deputy Moore's testimony that, while he was aware that Decedent was "mentally unstable," he was not aware that Decedent was suicidal, we cannot conclude that the evidence preponderates against the trial court's finding that Deputy Moore "did not believe [Decedent] would suffer harm." Certainly, Deputy Moore owed a duty to Decedent to perform the wellness checks, and Deputy Moore undisputedly breached this duty. However, in the absence of any evidence to support a finding that it was Deputy Moore's intent to harm the Decedent, his actions, while negligent, were not intentional so as to establish Shelby County's sovereign immunity under the GTLA. "[A] negligent actor does not desire to bring about the consequences which follow, nor does he or she know that they are substantially certain to occur, or believe that they will; there is merely a risk of such consequences, sufficiently great to lead a reasonable person in his or her position to anticipate them, and to guard against them." *Id.* at \*6 (quoting 57A Am.Jur.2d Negligence § 30).

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order of judgment. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Shelby County, Tennessee, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE